JEANNETTE SHEET GLASS CORPORATION, Plaintiff,

v.

UNITED STATES, Defendant,

and

Crystal International Corporation, and Flachglas A.G., Intervenors,

Glaverbel, S.A., Intervenor,

Erie Scientific Company, A Division of Sybron Corporation, and Erie-Electroverre, S.A., A Wholly Owned Subsidiary of Sybron Corporation, Intervenors.

Court No. 83-5-00729.

United States Court of International Trade.

Jan. 9, 1987.

Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart and James R. Cannon, Jr.), Washington, D.C., for plaintiff.

Lyn M. Schlitt, Gen. Counsel and Michael P. Mabile, Asst. Gen. Counsel and Stephen McLaughlin, Washington, D.C., for defendant.

Mudge Rose Guthrie Alexander & Ferdon (N. David Palmeter and Alan H. Price, Washington, D.C., of counsel), for intervenors Crystal Intern. Corp. and Flachglas A.G.

Ulmer, Berne, Laronge, Glickman & Curtis (Morton L. Stone and Ronald H. Isroff, Cleveland, Ohio, of counsel) for intervenor Glaverbel, S.A.

Hodgson, Russ, Andrews, Woods & Goodyear (Victor T. Fuzak, Anthony L. Dutton and Craig M. Indyke, Buffalo, N.Y., of counsel) for intervenors Erie Scientific Co. and Erie-Electroverre, S.A.

NEWMAN, Senior Judge:

### Introduction

In this action, plaintiff challenges the preliminary negative determinations of the International Trade Commission ("Commission") issued in antidumping investigations pursuant to 19 U.S.C. § 1673b(a). The Commission's preliminary determinations found: (1) no "reasonable indication" that plaintiff, the sole domestic producer of thin sheet glass, is materially injured or threatened with material injury by reason of imported "regular quality" thin sheet glass from Switzerland, Belgium or the Federal Republic of Germany allegedly sold at less than fair value ("LTFV"); and (2) no reasonable indication that plaintiff is materially retarded in the establishment of a "high quality" thin sheet glass industry by reason of imports of such glass from Belgium or the Federal Republic of Germany allegedly sold at LTFV. *Thin Sheet Glass from Switzerland, Belgium and the Federal Republic of Germany,* Inv. Nos. 731–TA–127, 128 and 129 (Preliminary), USITC Pub. No. 1376 (May 1983). In view of the foregoing negative determinations, the antidumping investigations were terminated and notice of such termination was published on May 11, 1983 (48 Fed.Reg. 21213 (1983)).

Jeannette commenced this action on May 17, 1983 challenging the Commission's preliminary negative determinations. So far as pertinent here, plaintiff asserted as grounds for reversing the Commission's determinations:

1) The Commission's determinations were not in accordance with the "reasonable indication" standard as articulated in *Republic Steel Corp. v. United States,* 8 CIT 29, 591 F.Supp. 640 (1984), *reh'g denied,* 9 CIT ——, Slip Op. 85–27 (March 11, 1985); and

2) The determinations were arbitary, capricious, an abuse of discretion and otherwise not in accordance with law.

In an opinion and order dated March 22, 1985, 10 CIT ——, 607 F.Supp. 123 (1985), this court, following *Republic Steel,* reversed the preliminary determinations of the Commission that there was no reasonable indication the domestic regular quality thin sheet glass industry was materially injured or threatened with material injury by reason of imports allegedly sold at LTFV, and remanded the action to the Commission for reconsideration of its preliminary negative determinations in compliance with *Republic Steel.*[1]

On remand the Commission complied with what it regarded as the "reasonable indication" standard prescribed by *Republic Steel,* and reached preliminary affirma-

---

[1] By order of March 22, 1985, this court affirmed the Commission's preliminary negative determination respecting material retardation of the establishment of a high quality thin sheet glass industry in the United States. 607 F.Supp. at 131–33. Regarding that aspect of the case, on November 26, 1986 plaintiff moved pursuant to Rule 54(b) for an order directing entry of a final judgment. An order is being entered concurrently herewith denying plaintiff's Rule 54(b) motion as moot. Granting defendant's present application for reconsideration and affirmance of the original negative determinations of April 22, 1983 results in a final appealable order covering all aspects of this action and will allow the Federal Circuit to review this case in its entirety rather than piecemeal. *See Jeannette Sheet Glass Corp. v. United States,* 803 F.2d 1576, 1582 (Fed.Cir.1986), (Jeannette's appeal dismissed since September 10, 1985 order is nonfinal).

tive determinations on the basis that the petition filed by Jeannette raised the possibility of material injury or threat of material injury. Also, in conformity with *Republic Steel* and the court's order of March 22, 1985, the Commission on remand did not weigh conflicting evidence in reaching its determinations. As a result of the remand proceeding, the Commission issued preliminary affirmative determinations on July 12, 1985. USITC Pub. 1727 (July 1985).

By an unpublished order dated September 10, 1985 this court, on the basis of the entire administrative record, affirmed the July 12, 1985 remand results of the Commission.

Subsequent to this court's order of September 10, 1985 approving the results of the remand, and during the pendency of appeals from that order,[2] the Federal Circuit issued its decision in *American Lamb Co. v. United States*, 4 CAFC ——, 785 F.2d 994 (Fed.Cir.1986) on February 28, 1986. There, the appellate court concluded that the "ITC's method of proceeding in applying the statutory reasonable indication standard does not contravene but accords with clearly discernible legislative intent and is sufficiently reasonable. To the extent that *Republic Steel* and its progeny suggest otherwise, those decisions cannot stand." 785 F.2d at 1004.

As we have seen, the Federal Circuit on June 2, 1986 *sua sponte* dismissed the appeals from this court's order of September 10, 1985 holding that such order was nonfinal. *Jeannette Sheet Glass Corp. v. United States*, Appeal Nos. 86–519 and 86–700 (Fed.Cir.1986). Thereafter, the Commission and several intervenors petitioned for rehearing. On July 8, 1986, the Federal Circuit by an unpublished order denied the petitions for rehearing, but without preju-

dice to: "(1) the Court of International Trade's amending its order to include a statement of certification under 28 U.S.C. § 1295(d)(1) [sic] or (2) the right of the Court of International Trade to change its order if so inclined." *Id.*

Defendant, International Trade Commission, has moved that in light of *American Lamb* and the Federal Circuit's order of July 8, 1986, this court reconsider its previous orders in this case, vacate its opinions and orders and affirm the Commission's original preliminary negative determinations issued on April 27, 1983.

In opposition to defendant's motion, plaintiff argues that the court in approving the Commission's remand results of July 12, 1985 "in essence applied the identical [reasonable indication] standard" thereafter pronounced by the Federal Circuit in *American Lamb* on February 28, 1986, since "the preliminary affirmative injury determination issued on remand was affirmed by this court on the basis of its own review of the entire record." Pltf's Brief in Opposition, at 1–2. Predicated on the foregoing contention, plaintiff insists that the Commission should be directed to proceed with final injury investigations and that the Commerce Department should be ordered to proceed with investigations of LTFV sales.[3]

## Opinion

### I.

Plaintiff's contention is patently without merit. In its March 22, 1985 order of remand, this court on the basis of *Republic Steel* rejected the Commission's approach to the "reasonable indication" standard, and directed the Commission to comply with *Republic Steel* in its reconsideration of the preliminary negative determinations.

**2.** Defendant and certain intervenors appealed this order; but by an order dated June 2, 1986, these appeals were dismissed by the Federal Circuit *sua sponte* on the ground that the September 10, 1985 order was nonfinal. *Jeannette Sheet Glass Corp. v. United States*, Appeal Nos. 86–519 and 86–700 (Fed.Cir.1986).

**3.** Parenthetically, on October 23, 1985 Jeannette filed a separate action with the court (Court No.

85–10–01485) seeking an order to compel continuation of the antidumping investigation. Based upon the Commission's affirmative injury determinations on remand and 19 U.S.C. § 1673b(b), Jeannette urges that Commerce should proceed with a preliminary investigation of less than fair value sales. That action is pending decision on motions for summary judgment before Judge Paul P. Rao.

607 F.Supp. at 130, 133. Specifically, in its March 22, 1985 decision this court found that the Commission's preliminary determinations were not in accordance with law, since conflicting evidence had been weighed by the Commission in reaching its determinations. 607 F.Supp. 128–130.

As previously noted, in *American Lamb* the Federal Circuit approved of the Commission's approach to applying the reasonable indication standard and expressly overruled *Republic Steel* and its "progeny".[4] The aspect of *Republic Steel* that the *American Lamb* court found particularly objectionable was the "mere possibility" criterion of reasonable indication and the proscription against the Commission's weighing of conflicting evidence. 785 F.2d at 1001–2, 1004. Thus, in *American Lamb* the Federal Circuit remanded the case to the Court of International Trade with instructions to vacate its order of remand which, as in the instant case, was predicated on *Republic Steel.*

In the remand proceedings in the current case, complying with *Republic Steel* and this court's order of March 22, 1985, the Commission explicitly did not weigh conflicting evidence in reaching its preliminary affirmative determinations. USITC Pub. 1727 at 5. In now seeking to have this court hold that its September 10, 1985 order approving the remand results on the basis of the entire record comports with *American Lamb* rather than with *Republic Steel,* plaintiff would require this court to turn a blind eye toward that vital aspect of the Commission's remand proceedings and the thrust of *American Lamb* (approving the Commission's weighing of conflicting evidence). While, as pointed up by plaintiff, this court in its order of September 10, 1985 affirmed the results of remand on the basis of the entire administrative record, by the same order this court implicitly approved of the Commission's compliance with that aspect of *Republic Steel* which barred the weighing of conflicting evidence. Clearly, then, this court's order of September 10, 1985 did not comply with the *American Lamb* rationale subsequently enunciated by the Federal Circuit on February 28, 1986.

In brief, since by the court's remand order of March 22, 1985 the Commission was directed to comply with *Republic Steel,* and was therefore barred from weighing conflicting evidence in its remand proceedings, plaintiff's contention that this court's order of September 10, 1985 approving the remand results accords with *American Lamb* is rejected.

## II.

◼ In light of *American Lamb* and as suggested by the Federal Circuit's order of July 8, 1986 in Appeal Nos. 86–519 and 86–700, reconsideration of the previous decisions in the present case is entirely appropriate. This court now ineluctably concludes that the Commission, in reaching its original preliminary determinations of April 27, 1983 regarding regular quality thin sheet glass, properly applied the statutory "reasonable indication" standard when it considered the entire administrative record and weighed the conflicting evidence. The only remaining issue to be addressed in this case is whether the Commission's determinations were nevertheless arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law, as claimed by plaintiff.[5] *See* 19 U.S.C. § 1516a(b)(1)(A).

The foregoing standard of review, while requiring a searching and careful inquiry into the facts, is a narrow one and plainly

---

4. There can be no doubt that this court's decision in the present action of March 22, 1985 and its order of September 10, 1985 are "progeny" of *Republic Steel.* In *American Lamb,* the Federal Circuit specifically noted that this court's decision of March 22, 1985 applied the *Republic Steel* rationale. 785 F.2d at 1000. *See also Jeannette Sheet Glass Corp. v. United States,* 803 F.2d 1576, 1578 (Fed.Cir.1986).

5. The court has previously addressed the issues concerning cumulation, volume of imports and the yield factor in its opinion of March 22, 1985; the views expressed therein are adhered to and therefore will not be considered in this opinion.

deferential to the determinations, findings and conclusions of the agency. Under that standard, this court is not permitted to itself weigh the evidence and substitute its judgment for that of the agency, even though had the matter been raised initially before the court, its decision might have been different. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974); *Pasco Terminals, Inc. v. United States,* 83 Cust.Ct. 65, 87, 477 F.Supp. 201, 220, *aff'd* 634 F.2d 610 (Fed.Cir.1980). Indeed, not only must the court avoid substituting its judgment for that of the agency, it may reverse the agency's action only where there is "a clear error of judgment" and where "there is no rational nexus between the facts found and the choices made." *Certified Color Manufacturers Association v. Mathews,* 543 F.2d 284, 294 (D.C.Cir.1976) (quoting in part, *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402 at 416, 91 S.Ct. 814 at 823, 28 L.Ed.2d 136 [1971]). *See also Budd Co., Railway Division v. United States,* 1 CIT 67, 507 F.Supp. 997 (1980); *SCM v. United States,* 84 Cust.Ct. 227, C.R.D. 80–2, 487 F.Supp. 96 (1980).

That Congress intended traditional administrative law principles be applicable to judicial review of the Commission's preliminary determinations under the Antidumping Act is made manifestly clear in the legislative history of the Trade Agreements Act of 1979:

> Section 516A would make it clear that traditional administrative law principles are to be applied in review of antidumping * * * duty decisions where by law Congress has entrusted the decision-making authority in a specialized, complex economic situation to administrative agencies. Thus, review of any determination listed in subsection (a)(1) [which includes 'reasonable indication' determinations by the Commission] would be to ascertain whether there was a rational basis in fact for the determination by the administrative decision-maker.

S.Rep. No. 96–249, 96th Cong., 1st Sess. 252 (1979), reprinted in 1979 U.S.Code Cong. & Ad.News 381, 638. *See also American Lamb,* 785 F.2d at 1004.

The purpose of a preliminary injury determination is to "eliminate unnecessary and costly investigations which are an administrative burden and an impediment to trade." *American Lamb,* 785 F.2d at 1002–03 (quoting S.Rep. No. 1298, 93rd Cong., 2d Sess. 171, U.S.Code Cong. & Admin.News 1974, p. 7186). By prescribing the "arbitrary and capricious" standard of review, Congress obviously intended that the Commission shall apply its expertise and judgment at the preliminary stage of an antidumping investigation to determine whether the investigation should continue; and further intended that the court should not exercise its review powers to compel the continuation of an investigation that the Commission has rationally determined to be clearly lacking in substantive merit.

■ So far as pertinent to the Commission's preliminary determinations respecting material injury or threat of material injury to the regular quality thin sheet glass industry, the Commission majority (Chairman Eckes and Commissioner Haggart) made the following findings of fact:

1. Throughout the period of investigation, production of regular quality thin sheet glass was profitable and the profits remained comparatively stable. USITC Pub. 1376 at 8.

2. Domestic production, shipments and capacity utilization rose from 1980 to 1981, but then declined from 1981 to 1982. *Id.*

3. Employment remained stable and hours worked increased from 1980 to 1981, but both factors declined from 1981 to 1982. *Id.*

4. Inventories of regular quality thin sheet glass increased throughout the period under investigation. *Id.*

Here, in determining whether the "difficulties" experienced by the domestic industry were caused by the alleged LTFV imports, the Commission considered, among other things, underselling by the imports, lost sales, and price suppression resulting

in lost revenues. *Id.* at 9. The Commission majority found that the domestic product frequently undersold the imports; and that in instances where there was underselling by the imports, the margin of underselling was "minimal". *Id.* at 10, 12. Significantly, lost sales and revenues were attributed by the majority to the lower quality of the domestic product in relation to the imports, and price was found not to be a determinative factor. *Id.* at 10–13.

Pertaining to threat of material injury, the Commission majority found in the negative based on the limited productive capacity or high levels of the capacity utilization of the exporters, absence of any plans to shift sales from the European market to the United States, and levels of inventory. *Id.* at 11–13.

While differing conclusions could fairly be drawn from the conflicting evidence of record, the court finds that there is a rational basis for the majority Commissioner's determination that there was no reasonable indication that the alleged LTFV imports had caused material injury or threatened material injury respecting the regular quality thin sheet glass industry. The majority's factual predicates relating to Jeannette's quality problems, and that price was not a determinative factor in lost sales and revenues, is supported by substantial evidence and have a rational nexus under the statute to its negative determination.[6] The majority Commissioners found that the instances in which purchasers either reduced the quantity purchased from Jeannette or refused to purchase the domestic product resulted not from price differentials, but rather from the quality difference between the domestic product and the imports.[7] The Commission majority possessed the authority to exercise its economic expertise and judgment in evaluating the conflicting evidence regarding the quality factor in relation to the instances of underselling by the imports and Jeannette's lost sales and revenues. *American Lamb.*

Turning to threat of material injury, the Commission majority properly examined such factors as the exporters' levels of capacity utilization, expansion plans concerning exports to the United States, and levels of inventories. Moreover, the Commission—as required—determined whether the likelihood of injury is real and imminent and not merely supposition, speculation or conjecture. S.Rep. No. 249, 96th Cong. 1st Sess. 88–89 (1979); *Alberta Gas Chemicals Inc. v. United States,* 1 CIT 312, 515 F.Supp. 780, 790 (1981). There is substantial evidence that none of the producing countries had any intention or ability to significantly expand production, shift imports to the United States markets, or alter their product mix to increase competition with the domestic producer. Additionally, the producing countries reported limited or no inventories indicating an absence of ability to rapidly increase sales.

In short, the court finds nothing in the Commission majority's economic criteria or factual findings that make its negative determination regarding threat of material injury arbitrary, capricious, an abuse of discretion or otherwise contrary to law.

### Conclusion

For the foregoing reasons, and upon reconsideration of its previous orders in this

---

**6.** The Commission majority found that Jeannette's lost sales and revenues were related to the lower quality of the domestic product compared with that of the imports, and that price was not a determinative factor. With regard to prices, the majority found: the domestic product was frequently priced lower than the imports from Switzerland, and that in the few instances of underselling by the Swiss imports, the margin of underselling was minimal; the domestic product in most instances significantly undersold the Belgium imports, and the instances where the imports undersold the domestic product the levels of underselling were minimal. The Commission did not receive information on purchaser's prices paid for imports of regular quality thin sheet glass from West Germany.

**7.** Dissenting Commissioner Stern's views of the quality issue differed from those of the majority Commissioners. Commissioner Stern was not satisfied that the quality factor alone explained why customers shifted from Jeannette to the imports and she further stressed the yield factor which was not specifically addressed by the majority Commissioners.

case predating *American Lamb,* the court affirms the Commission's April 27, 1983 preliminary negative determinations concerning *Thin Sheet Glass from Switzerland, Belgium and the Federal Republic of Germany.* Accordingly, this court's opinion and order dated March 22, 1985 are vacated only to the extent that they were predicated upon the "reasonable indication" standard prescribed by *Republic Steel* and are adhered to in all other respects; further, this court's order of September 10, 1985 affirming the Commission's preliminary affirmative determinations on remand is vacated. *Cf. Armstrong Rubber Co. v. United States,* 10 CIT ——, 614 F.Supp. 1252 (1985), *remanded with instructions to vacate,* Fed.Cir.App. No. 85–2707 (unpublished order dated April 7, 1986); *American Grape Growers Alliance for Fair Trade v. United States,* 10 CIT ——, 615 F.Supp. 603 (1985), *remanded with instructions to vacate,* Fed.Cir.App. Nos. 85–2717 and 86–556 (unpublished order dated April 7, 1986).