The **TORRINGTON COMPANY,**
Plaintiff,

v.

The **UNITED STATES, Defendant,**

and

**NTN Bearing Corporation of America, et al., Defendants–Intervenors.**

No. 91–05–00355.

United States Court of International Trade.

April 3, 1992.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Lane S. Hurewitz, Myron A. Brilliant and Serena L. Wilson, Washington, D.C., for plaintiff.

James A. Toupin, Asst. Gen. Counsel, Marc A. Bernstein, Office of Gen. Counsel,

U.S. Intern. Trade Com'n, Washington, D.C., for defendant.

Barnes, Richardson & Colburn, Robert E. Burke, Donald J. Unger, Brian F. Walsh, James A. Karamanis and Diane A. MacDonald, Chicago, Ill., for NTN Bearing Corp. of America, American NTN Bearing Mfg. Corp., NTN Bearing Corp. of Canada and Tung Pei Indus. Co., Ltd., defendants-intervenors.

Howrey & Simon, Herbert C. Shelley, Alice A. Kipel, Juliana M. Cofrancesco and Jennifer Rie, for SKF USA, Inc., SKF Argentina S.A., SKF Steyr Ges.m.b.H., SKF do Brazil Ltda. and SKF Industrias Mexicanas, S.A. de C.V., defendants-intervenors.

Grunfeld, Desiderio, Lebowitz & Silverman Max F. Schutzman, David L. Simon and Andrew B. Schroth, for FAG bearings Ltd., FAG Austria Walzlager, Rolamentos FAG Ltda., Sammi Precision Bearings Industries Co. and FAG Bearings Corp., defendants-intervenors.

Venable, Baetjer, Howard & Civiletti, John Gurley, for Peer Bearing Co., defendant-intervenor.

Bryan, Cave, McPheeters & McRoberts, Peter D. Ehrenhaft and Lizbeth R. Levinson, for Magyar Gordulocsapagy Muvek, Impexmetal, Fabryka Lozysk Tocznych–Kielce and Fabryka Lozysk Tocznych–Krasnik, defendants-intervenors.

Donovan, Leisure, Rogovin, Huge & Schiller, Michael P. House, Jae Chang Lee and Raymond Paretzky, for Korea Machinery Co., Ltd. and Golden Bell U.S.A. Co., defendants-intervenors.

Baker & McKenzie, Kevin M. O'Brien, for Emerson Power Transmission Co., defendant-intervenor.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Chief Judge:

Plaintiff brings this action challenging the negative preliminary determinations of injury by the U.S. International Trade Commission in the antidumping and countervailing duty investigations regarding *Ball Bearings, Mounted or Unmounted, and Parts Thereof, from Argentina, Austria, Brazil, Canada, Hong Kong, Hungary, Mexico, the People's Republic of China, Poland, the Republic of Korea, Spain, Taiwan, Turkey, and Yugoslavia,* 56 Fed. Reg. 14,534 (Int'l Trade Comm'n 1991) (neg. prelim.). The Court has jurisdiction under 19 U.S.C. § 1516a(a)(1)(C) (1988) and 28 U.S.C. § 1581(c) (1988). The Court affirms the Commission's determinations and holds the Commission did not abuse its discretion: 1) in relying upon questionnaire data in determining the condition of the domestic industry; 2) by declining to exclude related parties from its consideration of the condition of domestic industry; 3) in concluding there was no reasonable indication of material injury or threat of material injury to the domestic industry; and 4) by declining to cumulate imports.

## STANDARD OF REVIEW

The Commission's role in a preliminary determination is to decide, on "the best information available to it at the time," whether there is a reasonable indication that a domestic industry is being materially injured or threatened with material injury by reason of imports of the merchandise under investigation. 19 U.S.C. § 1673b(a) (1988). The Court of Appeals for the Federal Circuit has affirmed the Commission's practice of reaching a negative preliminary determination of injury only when: 1) the record as a whole contains clear and convincing evidence that there is no material injury or threat of injury by reason of imports, and; 2) there is no likelihood that contrary evidence will arise in a final investigation. *American Lamb Co. v. United States,* 4 Fed.Cir. (T) 47, 55, 785 F.2d 994, 1001 (1986). This Court must uphold a negative preliminary injury determination of the Commission unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(A) (1988). For this purpose, the Court is to "'ascertain whether there was a rational basis in fact for the determination.'" *American Lamb,* 4 Fed.Cir. (T) at 59, 785 F.2d at 1004 (quoting S.Rep. No. 249, 96th

Cong., 1st Sess. 252 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 638).

DISCUSSION

A. *The Commission's Reliance Upon Questionnaire Data*

The Commission determined that the industry against which it was to assess the impact of the alleged less than fair value (LTFV) imports was the industry producing ground ball bearings, mounted and unmounted, and parts thereof. *Ball Bearings, Mounted or Unmounted, and Parts Thereof, from Argentina, Austria, Brazil, Canada, Hong Kong, Hungary, Mexico, the People's Republic of China, Poland, the Republic of Korea, Spain, Taiwan, Turkey and Yugoslavia,* Inv. Nos. 701-TA-307 and 731-TA-498-511, USITC Pub. 2374 at 1 n. 3 (Apr.1991) (prelim.). It sent questionnaires to 51 firms it had reason to believe produced ball bearings, or parts thereof, in the United States during the calendar years 1988-90. *Id.* at A-24. The Commission received usable responses from 25 producers.

The Commission concluded the questionnaire data were sufficiently complete to provide an accurate characterization of the condition of the domestic industry and that there was no likelihood that additional evidence obtained in a final investigation would produce a materially different view of the industry. *Id.* at 19. It determined that during the period of investigation factors relating to domestic consumption and production were generally positive, the market share of domestic producers remained at high levels, employment-related indicators were uniformly positive and profitability changed little, despite large annual fluctuations. *Id.* at 19-21. Also, the Commission noted that since production increased at a greater rate than consumption, inventories of complete ball bearings increased throughout the period of investigation. In addition, the Commission cited increases in prices and positive investment-related indicators as factors leading to its conclusion that the industry was in a strong condition. *Id.* at 21-22.

Plaintiff contends the Commission abused its discretion by relying upon incomplete questionnaire data. Plaintiff also complains the Commission erred in concluding the record clearly and convincingly supported a negative determination since the questionnaire data conflicted with data compiled by the Bureau of the Census. Plaintiff further asserts the Commission abused its discretion by not attempting to reconcile the conflicting data.

Plaintiff argues the Commission relied upon questionnaire data containing information from only half of the known producers of ball bearings. The Commission is required to make its preliminary determination within 45 days based upon the "best information available to it at the time." 19 U.S.C. 1673b(a); *see Atlantic Sugar, Ltd. v. United States,* 2 Fed.Cir. (T) 130, 133-34, 744 F.2d 1556, 1561 (1984) (noting the extremely short deadlines built into the antidumping law). All of the known domestic producers were surveyed. Three firms indicated they did not produce ground ball bearings or parts during the period of investigation. Other firms responded too late for their responses to be incorporated into the staff report presented to the Commission at the time of the vote in these investigations or provided data in a form that could not be incorporated into the staff report. The information provided by the 25 producers represented a substantial majority of domestic production, accounting for an estimated 74%, by quantity, of producers' total shipments of complete ground ball bearings in 1989 and for 68%, by value, of 1989 producers' total shipments of ball complete ground bearings and parts. USITC Pub. 2374 at 19 & A-24. Under these circumstances, the Commission did not abuse its discretion in determining its questionnaire data were sufficiently complete to accurately describe the condition of the domestic industry.

Plaintiff also contends the record does not clearly and convincingly support a negative determination because the questionnaire data conflicted with the Bureau of the Census data contained in plaintiff's petition and post-conference submissions.

Plaintiff claims the Census data show declining trends in: 1) the quantity and value of producers' total domestic shipments of complete ground ball bearings, 2) the quantity and value of producers' share of apparent domestic consumption of complete ground ball bearings, 3) the quantity of domestic production of complete ground ball bearings and parts, 4) capacity utilization and 5) the value of apparent domestic consumption of complete ground ball bearings and parts. Plaintiff states that compared to the questionnaire data, the Census data show steeper decreases in the quantity of apparent domestic consumption of complete ground ball bearings and steeper increases in market penetration, in quantity and value, by the subject imports. Plaintiff, therefore, asserts that the Commission abused its discretion in concluding additional evidence obtained in a final investigation would not produce a materially different view.

Since Census data were only available for 1988–89, they did not provide information for the entire 1988–90 period of investigation. Also, the merchandise under investigation includes only *ground* bearings, mounted or unmounted and parts. USITC Pub. 2374 at 1 n. 3. The Census documents provide segregated data for ground bearings only for the quantity and value of producers' total shipments. The Bureau of the Census, U.S. Dep't of Commerce, MA35Q(99)–1, *Current Industrial Reports: Antifriction Bearings 1989,* Table 1B (Sept.1990). The export statistics in the Census report provide only aggregate data for ground and unground bearings. *Id.* at Table 3. As a result, meaningful information concerning producers' domestic shipments, apparent domestic consumption, domestic producers' share of apparent consumption and import penetration cannot be derived from the Census data. In addition, the Census report does not provide data regarding domestic production and capacity utilization.

The Commission is required, using the best information available to it, to conduct a thorough investigation. *American Lamb,* 4 Fed.Cir. (T) at 58, 785 F.2d at 1003–04. After examining all the data submitted to and collected by the Commission, the Court finds the Commission did not abuse its discretion in determining the questionnaire data were the best information available to it for examining producers' domestic shipments, domestic production, capacity utilization, apparent domestic consumption, domestic producers' share of apparent consumption and import penetration. Since the Census data were not available for the entire period of investigation and did not provide complete data for the merchandise under investigation, they do not diminish the clear and convincing nature of the record. In requesting the Court to substitute the data contained in its petition for the questionnaire data, plaintiff requests the Court to substitute its judgment for that of the Commission. The Court's role, however, is to ascertain whether the was a rational basis in fact for the determination, *American Lamb,* 4 Fed. Cir. (T) at 59, 785 F.2d at 1004; it is not the Court's function to decide that it would have made another decision on the basis of the evidence. *See Matsushita Elec. Indus. Co. v. United States,* 3 Fed.Cir. (T) 44, 54, 750 F.2d 927, 936 (1984).

Since the Commission received usable responses from nearly all of the major producers, *see* USITC Pub. 2374 at A–24, it was reasonable for the Commission to conclude that additional information obtained in a final investigation would not provide a materially different view. "The statute calls for a reasonable indication of injury, not a reasonable indication for further inquiry." *American Lamb,* 4 Fed.Cir. (T) at 55, 785 F.2d at 1001.

In addition, plaintiff contends the Commission abused its discretion by not attempting to reconcile the apparent conflict between the questionnaire data and the Census data. The Commission is presumed to have considered all of the evidence in the record. *Granges Metallverken,* 13 CIT 471, 479, 716 F.Supp. 17, 24 (1989). The fact that certain information is not discussed in a Commission determination does not establish that the Commission failed to consider that information because

there is no statutory requirement that the Commission must respond to each piece of evidence presented by the parties. *Id.* at 478–79, 716 F.Supp. at 24. "A court may 'uphold [a] decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Ceramica Regiomontana, S.A. v. United States,* 5 Fed.Cir. (T) 77, 78, 810 F.2d 1137, 1139 (1987) (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)).

B. *The Commission's Decision not to Exclude Related Parties*

Plaintiff contends the Commission erred by failing to exclude from its analysis of the domestic industry related parties who import or are related to exporters of the subject merchandise. *See* 19 U.S.C. § 1677(4)(B) (1988). Plaintiff argues financial indicators relevant to the condition of the domestic industry were skewed by inclusion of related parties.

The decision whether to exclude parties who import or are related to exporters of the subject merchandise from consideration of the domestic industry is within the discretion of the Commission. 19 U.S.C. § 1677(4)(B). In making this determination, the Commission examines whether there are "appropriate circumstances" for excluding the firm in question from the definition of the domestic industry. *Empire Plow Co. v. United States,* 11 CIT 847, 853, 675 F.Supp. 1348, 1353 (1987). The court has upheld the Commission's practice of examining such factors as: 1) the percentage of domestic production attributable to related producers; 2) the reason why importing producers choose to import the subject merchandise (whether to benefit from unfair trade practice or to enable them to continue production and compete in the domestic market), or; 3) the competitive position of the related producer vis-a-vis other domestic producers. *Id.; Sandvik AB v. United States,* 13 CIT 738, 748–49, 721 F.Supp. 1322, 1332 (1989), *aff'd mem.,* 8 Fed.Cir. (T) ——, 904 F.2d 46 (1990).

The Commission concluded that appropriate circumstances did not exist to exclude related parties from consideration of the domestic industry. USITC Pub. 2374 at 17. The Commission noted that the ball bearing industry is global in nature and dominated by a small number of multinational companies. *Id.* Those companies, including plaintiff, operate production facilities in several countries, where production is rationalized to meet the particular needs of each country's market. *Id.* Since those companies do not find it efficient to produce all ball bearing lines in their U.S. facilities, they import ball bearings or parts from their foreign production operations. *Id.* at 16. The Commission found the related parties' importation was not undertaken principally to benefit from unfair trade practices. *Id.* The Commission also explained the related parties generally had a longstanding presence as U.S. producers, and that import volume from the subject countries was smaller than U.S. production for each of the related parties and was in most instances quite low. *Id.* at 16–17. It also noted the related parties collectively account for a substantial proportion of U.S. sales and include some of the largest domestic producers of ball bearings. The Commission determined that exclusion of the related parties could present a distorted view of the industry. *Id.* at 17. The Court finds it was reasonable for the Commission to conclude appropriate circumstances did not exist for exclusion of any of the related parties.

Plaintiff argued the related parties' production rationalization and import practices indicate they shielded their domestic operations from the effects of the imported merchandise. As a result, according to plaintiff, the related parties benefitted from unfairly traded ball bearings imported from the subject countries as well as from nine other countries already subject to an antidumping order. Nonetheless, the Commission has the discretion to make a reasonable interpretation of the facts, *see National Ass'n of Mirror Mfrs. v. United States,* 12 CIT 771, 778, 696 F.Supp. 642, 647 (1988), and the Court will not decide whether it would have made the same decision on

the basis of the evidence. *Matsushita Elec. Indus.*, 3 Fed.Cir. (T) at 54, 750 F.2d at 936.

C. *Whether the Commission Properly Weighed the Evidence*

1. Inventories

Plaintiff claims the Commission abused its discretion in determining the domestic industry was not experiencing or threatened with material injury. Plaintiff contends increasing domestic inventories were sufficient to establish a reasonable indication that the domestic industry was experiencing or threatened with material injury.

An increase in inventories does not compel an affirmative determination. The statutes direct the Commission to investigate a variety of factors in determining the condition of the domestic industry, 19 U.S.C. § 1677(7)(C)(iii), and provide "the presence or absence of any factor ... shall not necessarily give decisive guidance with respect to the determination" of material injury. 19 U.S.C. § 1677(7)(E)(ii) (1988). The court has stated "[n]o factor, standing alone, triggers a *per se* rule of material injury." *American Spring Wire Corp. v. United States*, 8 CIT 20, 23, 590 F.Supp. 1273, 1277 (1984), *aff'd sub. nom. Armco, Inc. v. United States*, 3 Fed.Cir. (T) 123, 760 F.2d 249 (1985); *see Jeanette Sheet Glass Corp. v. United States*, 11 CIT 10, 654 F.Supp. 179 (1987) (affirming Commission's negative preliminary determination in investigation in which U.S. producers' inventories increased throughout period of investigation). The Commission determined domestic inventories increased throughout the period of investigation because production increased at a greater rate than consumption. USITC Pub. 2374 at 21. In light of the Commission's findings regarding production, shipments, consumption and import penetration, it was reasonable for the Commission to reach a negative determination despite the increase in U.S. producers inventories. Plaintiff's argument essentially goes to the weight the Commission assigned to the increase in inventories, which is within its discretion. *See National Ass'n of Mirror Mfrs.*, 12 CIT at 774, 696 F.Supp. at 644. It is not the Court's function to reweigh the evidence. *See American Lamb*, 4 Fed.Cir. (T) at 58, 785 F.2d at 1004.

2. Profitability

Plaintiff contends that the Commission ignored substantial deterioration of profitability within the U.S. industry, arguing a large number of firms experienced net losses in 1988 and 1990. The Commission is to determine the financial performance of the industry as a whole. *Sandvik AB v. United States*, 13 CIT at 746, 721 F.Supp. at 1330. The Commission is also directed to examine a number of financial factors in determining the condition of the domestic industry. 19 U.S.C. § 1677(7)(C)(iii). The Commission reasonably determined that on an aggregate basis domestic producers showed positive operating income, net income before taxes and cash flow during the period of investigation.

Plaintiff also argues the Commission abused its discretion in concluding the domestic industry was not experiencing material injury since the industry's ratio of operating income to net sales in 1990 was lower than 1988, a year in which the Commission found in another determination that the ball bearing industry was experiencing injury. *See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof from the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom*, Inv. Nos. 303–TA–19–20 & 731–TA–391–399, USITC Pub. 2185 (May 1989) (final). Findings in related determinations regarding threat or material injury are generally not dispositive on subsequent determinations. *Citrosuco Paulista, S.A. v. United States*, 12 CIT 1196, 1217, 704 F.Supp. 1075, 1094 (1988). In addition, plaintiff's argument fails to consider the Commission does not and cannot determine a specific profitability level injurious because the statute directs the Commission to evaluate a number of factors in determining the condition of the domestic industry. *See American Spring*

*Wire,* 8 CIT at 23, 590 F.Supp. at 1277. In *Antifriction Bearings,* the Commission explained that a number of declining trends in addition to profitability lead to its conclusion that the ball bearing industry was experiencing material injury. USITC Pub. 2185 at 48.

The Commission has discretion to ascertain which economic factors are relevant in an investigation, and the weight to be given those factors. *See National Ass'n of Mirror Mfrs.,* 12 CIT at 774, 696 F.Supp. at 645; *Copperweld Corp. v. United States,* 12 CIT, 148, 160, 682 F.Supp. 552, 562 (1988). Since it determined other indicators such as shipments, production and employment rose during the period of investigation and that wages and investment-related indicators were also positive, the Commission did not abuse its discretion in reaching its negative determination.

3. Price Suppression

Plaintiff contends the Commission ignored in its examination of material injury the quarterly price comparisons in the record indicating substantial underselling. The Commission, however, generally considers issues of price suppression and underselling with regard to causation of injury. *See, e.g., Heavy Forged Handtools from the Peoples Republic of China,* USITC Pub. 2284 at 23, Inv. No. 731–TA–457 (May 1990) (prelim.). Since Commissioners Lodwick and Rohr concluded on the basis of their examination of the domestic industry that there was no reasonable indication that the industry was currently experiencing material injury, they found it unnecessary to address the issue of whether imports of the subject merchandise were causing material injury. USITC Pub. 2374 at 22–23. In a separate opinion analyzing the causation of material injury, Acting Chairman Brunsdale concluded the demand for ball bearings is not very sensitive to price. *Id.* at 55–56. All three negative-voting Commissioners reasonably determined, however, that domestic prices showed significant increases. *Id.* at 21 & n. 73. The Commission, therefore, did not ignore how the subject imports have affected domestic prices in determining that the domestic industry was not experiencing material injury.

D. *Cumulation of Imports in Determining the Cause of Material Injury or Threat of Material Injury*

1. The Acting Chairman's Analysis of Material Injury

In a separate opinion, the Acting Chairman examined the issue of whether imports of the subject merchandise were causing injury to the domestic industry. Pursuant to the negligible import provision, *see* 19 U.S.C. § 1677(7)(C)(v) (1988), which allows the Commission not to cumulate when imports of the subject merchandise are negligible, she declined to cumulate imports from 12 of the 14 countries. USITC Pub. 2374 at 51–53. Although she cumulated imports from Canada and Taiwan, she determined that three factors reduced their impact on the domestic industry: 1) the demand for ball bearings was not very sensitive to changes in price; 2) the cumulated imports had low market penetration, and; 3) the domestic producers had unused production capacity. *Id.* at 54–57. Taking the condition of the industry into account, she concluded there was no reasonable indication of material injury by reason of imports from Canada and Taiwan allegedly sold at LTFV. *Id.* at 57.

Plaintiff contends the Acting Chairman misapplied the negligible import exception in declining to cumulate imports from all 14 countries. Plaintiff maintains that although the statute does not establish a cutoff, the Acting Chairman failed to cumulate bearings from countries with less than a 1% market share and that imports from each of the fourteen countries were not isolated or sporadic, each exceeding one million bearings valued at over $2 million in 1989. Plaintiff also claims Chinese ball bearings compete with domestic bearings since the record does not establish that Chinese bearings were of inferior quality.

In examining whether the subject imports are causing material injury, the Commission is not required to cumulate

imports if it determines imports are negligible and have no discernable adverse impact on the domestic industry. 19 U.S.C. § 1677(7)(C)(v). The statute provides that in determining whether to cumulate imports,

> the Commission shall evaluate all relevant economic factors, including, but not limited to, whether
>
> (I) the volume and market share of the imports are negligible,
>
> (II) sales transactions involving the imports are isolated and sporadic, and
>
> (III) the domestic market for the like product is price sensitive by reason of the nature of the product, so that a small quantity of imports can result in price suppression or depression.

*Id.*

The legislative history states the statute "does not provide ... a specific numerical standard for what constitutes 'negligible' in recognition that what may be 'negligible' imports in volume or market share for one industry may be different than for another industry," but directs the Commission to interpret the negligible import exception "in a manner that makes sense given the realities of the marketplace." H.R.Rep. No. 40, Part 1, 100th Cong., 1st Sess. 131 (1987).

The Acting Chairman noted that the individual market shares for Argentina, Brazil, Hungary, Hong Kong, Poland, Turkey and Yugoslavia never rose above .2% during the period of investigation, imports from Austria and Spain peaked at .4% and .8% in 1989 and imports from Korea, Mexico and China reached their highest import penetration levels of .5%, .6% and .8% in 1990. *See* USITC Pub. 2374 at 52. She also noted that there was general agreement that Chinese ball bearings were of inferior quality and some allegations that Eastern European ball bearings were also of low quality. *Id.* The Acting Chairman determined the market was not very sensitive to price since ball bearings make up only a small fraction of the total cost of final products. USITC Pub. 2374 at 56. She also determined that only in extraordinary circumstances could she find that strikingly low levels of imports would result in price suppression. The Court finds it was reasonable for the Acting Chairman to conclude the small volume of imports from Argentina, Austria, Brazil, Hungary, Hong Kong, Korea, Mexico, Poland, Spain, Turkey and Yugoslavia were negligible. *See, e.g., Coated Groundwood Paper from Austria, Belgium, Finland, France, Germany, Italy, the Netherlands, Sweden, and the United Kingdom,* Inv. Nos. 731–TA–486–494, USITC Pub. 2359 at 33–36 (Feb.1991) (prelim.) (In a highly price sensitive market the only countries not candidates for the negligible exception were those with more than a 2% market share.).

Although the Acting Chairman found that with the possible exception of imports from Hong Kong, Poland and Turkey, none of the imports were sporadic, this does not preclude a finding that the imports were negligible. To conclude otherwise could lead to the absurd result that a regular import flow of a small number of bearings per month would preclude a finding that the imports were negligible. *See* H.R.Rep. No. 40, Part 1, 100th Cong., 1st Sess. at 131 (cumulation provision not intended to lead to ridiculous results). Moreover, the Commission is directed to interpret the negligible import provision in a manner that makes sense in light of the market. *Id.* Annual consumption in the ball bearing industry is measured in hundreds of millions of units and even plaintiff acknowledges that imports of 4 million units may be insignificant. AR. Doc. 68 at 15 & 59.

Also, the record supports the Acting Chairman's conclusion regarding the limited fungibility of Chinese ball bearings caused by differences in quality. *See* AR. Doc. 68 at 143–144 & 166. Given the low market penetration of Chinese ball bearings, it was not an abuse of discretion for her to decline to cumulate Chinese ball bearings.

2. The Commission's Analysis of the Threat of Material Injury

All three negative-voting commissioners jointly considered the issue of threat of material injury. They did not, in their dis-

cretion, cumulate imports from any of the countries, citing a lack of uniform pricing, volume trends, or market penetration and low market shares of imports from many of the subject countries. *Id.* at 25. The Commission then considered each of the threat factors set forth in 19 U.S.C. § 1677(7)(F)(i) (1988) for each of the 14 countries and concluded there was no reasonable indication of threat of material injury by reason of alleged LTFV imports from those countries.

Plaintiff claims the Commission abused its discretion in failing to cumulate the imports from all 14 countries in determining the domestic industry was not threatened with material injury. Relying on confidential data, plaintiff argues the record is inadequate to support the Commission's conclusion that there was a "noticeable lack of uniformity of pricing trends among the 14 countries." USITC Pub. 2374 at 25.

The statute provides "[t]o the extent practicable ... the Commission *may* cumulatively assess" imports in determining whether a domestic industry is threatened with material injury. 19 U.S.C. § 1677(7)(F)(iv) (1988) (emphasis added). The court has upheld the Commission's decision not to cumulate imports when it has found there was "great disparity in the patterns of volume increases" and "patterns of underselling, or lack thereof, varied greatly." *See Asociacion Colombiana de Exportadores de Flores v. United States,* 12 CIT 1174, 1178, 704 F.Supp. 1068, 1072 (1988). Plaintiff's arguments address the adequacy of the Commission's investigation. The Commission staff made 478 quarterly price comparisons involving six products. *See* USITC Pub. 2374 at A-64–69. While the Commission may not have compared as many products or made as many comparisons as plaintiff prefers, given the short period of time to conduct a preliminary investigation, the Commission's determination that there was a lack of uniformity in pricing trends was reasonable.

Plaintiff also argues the relationship between affiliated companies militated in favor of cumulation. The Commission, however, reasonably concluded the nature of the related parties' import practices indicated that they did not import principally to benefit from unfair trade practices. USITC Pub. 2374 at 16; *contra Coated Groundwood Paper,* USITC Pub. 23 at 31.

3. Import Volume

Plaintiff claims the Acting Chairman in her negative determination of material injury and the Commission majority in its negative determination of threat of material injury erred by evaluating the value of imported ball bearings for purposes of cumulation. Plaintiff asserts that the Commission is required to evaluate the *quantity* of imports for cumulation purposes because the cumulation statutes require the Commission to evaluate the *volume* of imports. *See* 19 U.S.C. §§ 1677(7)(C)(iv), (v) & (F)(iv) (1988).

In reviewing an agency's interpretation of a statute, "[i]f the statutory language is clear, then 'that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Chaparral Steel Co. v. United States,* 8 Fed.Cir. (T) ——, ——, 901 F.2d 1097, 1101 (Fed.Cir.1990) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)). When the statute is not clear, and the agency has made an interpretation, the court must examine the agency's interpretation as to whether it is "based on a permissible construction of the statute." *Id.* The statutes do not expressly state the Commission must evaluate volume in terms of quantity, 19 U.S.C. §§ 1677(7)(C)(iv), (v) & (F)(iv), and legislative history indicates the Commission should not apply the cumulation provision in a manner that would lead to ridiculous results. H.R.Rep. No. 40, Part 1, 100th Cong., 1st Sess. at 131. Moreover, "[t]he Commission has wide discretion in choosing a reasonable analytical methodology." *Metallverken Nederland, B.V. v. United States,* 13 CIT 1013, 1024, 728 F.Supp. 730, 739 (1989).

off

■ The record provides the construction of aggregate data regarding the quantity of imports would have been impractical due to variations in product sizes and weight per unit between complete bearings and parts. USITC Pub. 2374 at A–56. Also, plaintiff itself used value-based data in its petition when comparing the volume of imports to domestic consumption. *See, e.g.,* AR. Doc. 2 at 112 & 113. In addition, the Commission has in other determinations used value-based measurements to ascertain import volumes of bearings products. *See, e.g., Antifriction Bearings,* USITC Pub. at 67, 69 & 71; *Tapered Roller Bearings and Parts Thereof, and Certain Housings Incorporating Tapered Rollers, from Hungary, the People's Republic of China, and Romania,* Inv. Nos. 731–TA–341, 344–45, USITC Pub.1983 at 16 (June 1987) (final). Plaintiff's argument that the Commission must analyze the volume of imports in terms of quantity could lead to absurd results in investigations involving industries producing low quantities of high-value merchandise. The Court finds it was reasonable for the Commission to use value-based indices when considering the volume of imports.

## CONCLUSION

The Court holds the Commission reasonably determined the record as a whole contained clear and convincing evidence that the domestic industry was not experiencing material injury or threatened with material injury and that there is no likelihood that contrary evidence will arise in a final investigation. The Commission did not abuse its discretion in relying upon questionnaire data in determining the condition of the domestic industry, declining to exclude related parties from its analysis of the condition of the domestic industry and declining to cumulate imports.

This motion having been submitted to the Court, after oral argument, post-argument submissions and due deliberation, it is

ORDERED plaintiff's motion for judgment on upon the agency record is denied, and it is further

ORDERED that this action is dismissed.