**CONNECTICUT STEEL CORPORATION, Co–Steel Raritan, Georgetown Steel Corporation, Keystone Steel & Wire Company, and North Star Steel Texas, Inc., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

Court No. 93–07–00382.
Slip Op. 94–64.

United States Court of International Trade.

April 22, 1994.

Wiley, Rein & Fielding (Charles Owen Verrill, Jr., Alan H. Price, Willis S. Martyn III, Peter S. Jordan and Brian E. Rosen), Washington, DC, for plaintiffs.

Lyn M. Schlitt, Gen. Counsel, James A. Toupin, Asst. Gen. Counsel, U.S. Intern. Trade Com'n (Rhonda M. Hughes), Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Chief Judge:

Plaintiffs, Connecticut Steel Corporation, Co–Steel Raritan, Georgetown Steel Corporation, Keystone Steel & Wire Company, and North Star Steel Texas, Inc., move for judgment on the agency record pursuant to US-CIT R. 56.2, contesting the negative preliminary determination of the United States International Trade Commission in *Certain*

*Steel Wire Rod From Trinidad and Tobago,* Inv. No. 731–TA–649 (Preliminary), USITC Pub. 2647 (June 1993), 58 Fed.Reg. 33,280 (1993). The court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(1) (1988) and 28 U.S.C. § 1581(c) (1988). Plaintiffs' motion is denied.

## BACKGROUND

Plaintiffs filed a petition with the Commission and the Department of Commerce in April 1993, alleging that imports of certain steel wire rod from Brazil, Canada, Japan, and Trinidad and Tobago, were sold in the United States at less than fair value (LTFV) and that such imports materially injured the domestic industry. Accordingly, the Commission instituted a preliminary antidumping duty investigation pursuant to 19 U.S.C. § 1673b(a) (1988). During the investigation, the Commission received information from responses to its questionnaires to importers, foreign producers and domestic producers. It also received information from the American Wire Producers' Association (AWPA), a trade association representing domestic producers of steel wire rod and wire products, which conducted a survey of its members who purchased wire rod from domestic and imported sources to manufacture wire products. Upon considering the evidence, the Commission determined, by a 5–1 vote, that there was no reasonable indication that the domestic industry was materially injured or threatened with material injury by reason of the alleged LTFV imports from Trinidad and Tobago; the Commission also determined that there was a reasonable indication that the domestic industry was materially injured by reason of the alleged LTFV imports from Brazil, Canada and Japan.[1] *Certain Steel Wire Rod From Brazil, Canada, Japan, and Trinidad and Tobago,* Invs. Nos. 731–TA–646–649 (Preliminary), USITC Pub. 2647 (June 1993); 58 Fed.Reg. 33,280 (1993).

The Commission's negative determination regarding Trinidadian imports was based on a number of factors. The Commission found that the volume and market share of the Trinidadian imports increased but remained low throughout the period of investigation, that customers purchased steel wire rod from Trinidad and Tobago for non-price reasons, such as to maintain an offshore source and to reduce the risk of disruption of domestic production and allocations, and that there was a clear pattern of overselling of U.S. products by the Trinidadian imports (i.e., imports priced higher than like domestic products). With respect to the negative threat determination in particular, the Commission found that there was no indication of price depression or suppression due to the Trinidadian imports, that the capacity utilization of the sole wire rod producer in Trinidad and Tobago, Caribbean Ispat Ltd. (Ispat), was very high, and that Ispat had numerous other traditional export markets accounting for the bulk of its production and was unlikely to shift the exports to the United States in the event that antidumping duties were levied on imports from Brazil, Canada and Japan.

Plaintiffs allege that the Commission's negative determination violates the letter and the spirit of the legal standard for preliminary investigations and request the case be remanded to the Commission for a redetermination.

## DISCUSSION

### 1. Standard of Review

This court will uphold the Commission's negative preliminary injury determination unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(A) (1988). The court shall apply traditional administrative law principles in review of the Commission's preliminary determination, and the review is "to ascertain whether there was a rational basis in fact for the determination." *American Lamb Co. v. United States,* 4 Fed. Cir. (T) 47, 58–59, 785 F.2d 994, 1004 (1986) (quoting S.Rep. No. 249, 96th Cong., 1st Sess. 252 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 638).

---

1. The Commission is required to separately assess the impact of imports from Trinidad and Tobago because it is designated as a beneficiary country under the Caribbean Basin Economic Recovery Act. 19 U.S.C. § 1677(7)(C)(iv)(II) (1988).

In a preliminary antidumping investigation, the Commission is required to determine, based on the best information available to it at the time of the preliminary determination, whether there is a reasonable indication that an industry in the United States is materially injured or is threatened with material injury by reason of imports of the merchandise under investigation. 19 U.S.C. § 1673b(a). The Commission has interpreted the statutory "reasonable indication" standard as requiring that a negative preliminary determination of injury be reached only when (1) the record as a whole contains clear and convincing evidence that there is no material injury or threat of injury by reason of imports, and (2) no likelihood exists that contrary evidence will arise in a final investigation. The Commission's interpretation of the statutory standard was upheld by the Court of Appeals for the Federal Circuit. *American Lamb*, at 55, 785 F.2d at 1001.

## 2. The Standard of Clear and Convincing Evidence

■ Plaintiffs assert that the Commission's determination was arbitrary, capricious, an abuse of discretion and not in accordance with law because it was not supported by clear and convincing evidence in the record. Plaintiffs claim that the Commission erred in making its determination based on contradictory data in the record and acted arbitrarily in ignoring evidence clearly supporting an affirmative determination.

It has been well established that, in applying the statutory standard of "reasonable indication" of injury, the Commission may weigh all the evidence and resolve conflicts in the evidence. *See American Lamb*, 4 Fed. Cir. (T) at 56, 785 F.2d at 1002. The Commission's weighing of evidence in a preliminary determination is necessary for the purpose of "eliminat[ing] unnecessary and costly investigations which are an administrative burden and an impediment to trade." *Id.* at 57, 785 F.2d at 1002–3 (quoting S.Rep. No. 1298, 93rd Cong., 2d Sess. 171, *reprinted in* 1974 U.S.C.C.A.N. 7186, 7308). In asserting that the evidence supporting the Commission's determination is not clear and convincing because of the conflicting evidence in the

record, plaintiffs request the court to reweigh the evidence. The court, however, cannot substitute its judgment for that of the Commission. Its role is to ascertain whether there was a rational basis for the determination, not to decide whether it would have made a different decision on the basis of the evidence. *Torrington Co. v. United States*, 16 CIT ——, ——, 790 F.Supp. 1161, 1167 (1992) (citing *American Lamb*, 4 Fed.Cir. (T) at 59, 785 F.2d at 1004; *Matsushita Elec. Indus. Co. v. United States*, 3 Fed.Cir. (T) 44, 54, 750 F.2d 927, 936 (1984)), *aff'd* 11 Fed.Cir. (T) ——, 991 F.2d 809 (1993). The court may reverse the Commission's determination only where there is "a clear error of judgment" and where "there is no rational nexus between the facts found and the choices made." *Jeannette Sheet Glass Corp. v. United States*, 11 CIT 10, 15, 654 F.Supp. 179, 183 (1987) (citations omitted).

■ Plaintiffs also assert that, under *American Lamb*, the Commission's determination must address whether particular evidence is clear and convincing and why that evidence forecloses further inquiry. Based on this assumption, plaintiffs attack individual pieces of evidence relied upon by the Commission as not clear and convincing. Plaintiffs, however, misstate the Commission's standard for reaching a negative determination. Rather than requiring each piece of evidence to be found clear and convincing, the standard approved by *American Lamb* requires that "the record as a whole" contain clear and convincing evidence that there is no material injury or threat of injury by reason of imports. *American Lamb*, 4 Fed.Cir. (T) at 55, 785 F.2d at 1001.

■ Plaintiffs further claim that the Commission's determination was arbitrary because it failed to discuss conflicting evidence provided by plaintiffs and failed to make a finding, and to provide explanations for such a finding, that its determination is supported by clear and convincing evidence and that no likelihood exists that contrary evidence will arise in a final investigation. "[T]here is no statutory requirement that the Commission must respond to each piece of evidence presented by the parties." *Torrington*, 790 F.Supp. at 1168 (citation omitted). The stan-

dard of clear and convincing evidence and no likelihood of future contrary evidence was set by the Commission in implementing the statutory standard of "no reasonable indication" of injury, and that standard was affirmed by the court as "permissible within the statutory framework." *American Lamb,* 4 Fed.Cir. (T) at 55, 785 F.2d at 1001. The Commission, however, is not required by law, nor has it developed a practice, to make an explicit finding that the standard has been met and to explain why it so finds. "A court may 'uphold [an agency's] decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Ceramica Regiomontana, S.A. v. United States,* 5 Fed.Cir. (T) 77, 78, 810 F.2d 1137, 1139 (1987) (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974); *Colorado Interstate Gas Co. v. FPC,* 324 U.S. 581, 595, 65 S.Ct. 829, 836, 89 L.Ed. 1206 (1945)).

### 3. Commission's Reliance on Certain Data

■ Plaintiffs' major complaint in this case is that the Commission relied solely upon data compiled from its own questionnaires and failed to consider the data provided by the AWPA survey which, according to plaintiffs, indicated many more instances of underselling by the Trinidadian imports and contained other pricing information supporting an affirmative determination. Plaintiffs contend that the AWPA survey provided a more reliable source of information because it covered more purchasers and products of the Trinidadian imports than the Commission questionnaires did.

"Absent some showing to the contrary, the Commission is presumed to have considered all evidence in the record." *Rhone Poulenc, S.A. v. United States,* 8 CIT 47, 55, 592 F.Supp. 1318, 1326 (1984) (citations omitted). That presumption is supported by the record of this case, which shows that the AWPA survey was referred to in several places in the Commission's Report. *See* USITC Pub. 2647 at I–50, n. 79; I–51, n. 84; I–52, n. 87; I–53, n. 91. In one place, the Report indicated that the Commission questionnaires requested price and quantity information on a quarterly basis; while the AWPA survey also provided pricing information, most of the AWPA data was compiled on an annual basis. *Id.* at I–53, n. 91. These discussions of the AWPA survey show that the Commission did not ignore the AWPA data; rather, it considered such data and decided not to rely on them for a reason.

The statute requires the Commission to make a preliminary determination "based upon the best information available to it at the time of the determination." 19 U.S.C. § 1673b(a). The court finds the Commission did not abuse its discretion in deciding that the questionnaire data were the best information available to it. As plaintiffs acknowledge, the Commission does not usually seek information from purchasers in a preliminary investigation. The Commission nevertheless considered the purchaser data submitted by the AWPA, and decided not to rely on them apparently because they were not compiled on a quarterly basis. *See* USITC Pub. 2647 at I–53, n. 91. Moreover, the Commission found the AWPA data in general showed "a mixture of both underselling and overselling." USITC Pub. 2647 at I–53, n. 91. Even plaintiffs admit—despite their claim that the AWPA data contained "substantial evidence" of underselling—that the AWPA data showed more instances of overselling than underselling. Pls.' Br. at 11. Thus, the AWPA data do not in themselves contradict the Commission's finding that there was a clear pattern of overselling.

In addition, plaintiffs challenge the Commission's reliance upon the volume of imports rather than the rate of increase in the threat-of-injury determination, and its reliance upon certain information in making findings regarding the capacity utilization of Ispat, the significance of inventory levels, and the indication of price suppression or depression. As plaintiffs acknowledge, the Commission has discretion in deciding upon these matters in the preliminary determination. The court is satisfied after reviewing the record that the Commission did not abuse its discretion.

### 4. No Likelihood of Future Contrary Evidence

■ Plaintiffs contend that since the AWPA survey contained purchaser data sim-

ilar to what the Commission would receive in a final investigation and since such data revealed a substantial amount of underselling, the Commission could not reasonably conclude that there is no likelihood that contrary evidence will arise in the final investigation. Even assuming that the AWPA data did contradict the Commission's questionnaire data, the mere presence of conflicting data does not establish the likelihood that contrary evidence will arise in the final investigation. "The statute calls for a reasonable indication of injury, not a reasonable indication for further inquiry." *American Lamb,* 4 Fed.Cir. (T) at 55, 785 F.2d at 1001. Given that the Commission weighed the evidence in the record and that its negative determination was based on multiple factors, including the volume of imports, the pattern of overselling, the level of capacity utilization, indication of price depression or suppression, and the likelihood of market shifting, *see* USITC Pub. 2647 at 29, the court finds that there was a rational basis for the Commission's conclusion that no likelihood exists that contrary evidence will arise in a final investigation.

### 5. Finding on Price Sensitivity of the Industry in Previous Investigations

■ Plaintiffs contend that the Commission erred in focusing its determination on the low volume of imports without considering the price sensitivity of the U.S. wire rod industry. According to plaintiffs, it is well recognized that a small quantity of low-priced imports can have a considerable effect on the market for fungible products, and the Commission had previously found that "one fundamental characteristic of carbon steel wire rod is its basic fungibility and price sensitivity within each of the three carbon categories." Pls.' Br. at 19 (quoting *Carbon Steel Wire Rod from the German Democratic Republic,* ITC Pub. 1607 at 8–9 (1984) (Inv. No. 731–TA–205) (preliminary); *accord Carbon Steel Wire Rod from Brazil and Trinidad and Tobago,* ITC Pub. 1444 at 12 (1983) (Inv. No. 731–TA–113–114) (final)). Plaintiffs claim that the Commission ignored the evidence of price sensitivity produced by plaintiffs, and that the Commission abused its discretion in failing to follow or to explain

its departure from previous findings that the U.S. wire rod industry is price sensitive. Pls.' Reply at 21 (quoting the rule that "an agency must either conform itself to its prior decisions or explain the reasons for its departure" from *Citrosuco Paulista, S.A. v. United States,* 12 CIT 1196, 1209, 704 F.Supp. 1075, 1088 (1988)).

"The Commission has discretion to ascertain which economic factors are relevant in an investigation and the weight to be given those factors." *Torrington,* 790 F.Supp. at 1170 (citations omitted). The court has long recognized that

> each injury investigation is *sui generis,* involving a unique combination and interaction of many economic variables; and consequently, a particular circumstance in a prior investigation cannot be regarded by the Commission as dispositive of the determination in a later investigation.

*Citrosuco Paulista,* 12 CIT at 1209, 704 F.Supp. at 1087–88 (quoting *Armstrong Bros. Tool Co. v. United States,* 84 Cust.Ct. 102, 115, C.D. 4848, 489 F.Supp. 269, 279 (1980)). "Thus, the Commission's determinations must be based upon an independent evaluation of the factors with respect to the unique economic situation of each product and industry under investigation." *Id.* (citations omitted). In this case, the Commission found that there was a clear pattern of overselling by the Trinidadian imports and that customers purchased the Trinidadian imports for non-price reasons. The unique combination and interaction of the economic variables could lead the Commission to reasonably conclude that price sensitivity of the industry was not a significant factor in this investigation. Although the reason for not considering price sensitivity was not explicitly given, the path of the Commission's decision is discernible. *See Ceramica Regiomontana,* 5 Fed.Cir. (T) at 78, 810 F.2d at 1139. Thus, the court finds the Commission did not abuse its discretion in not considering the factor of price sensitivity in this determination.

### CONCLUSION

For reasons stated above, the court holds that the Commission's preliminary injury determination with respect to the alleged

LTFV imports from Trinidad and Tobago is not arbitrary, capricious or an abuse of discretion, and is otherwise in accordance with law. Accordingly, the Commission's preliminary determination is affirmed.

## JUDGMENT ORDER

This action having been submitted for decision and upon due deliberation, it is hereby

**ORDERED** that plaintiffs' motion for judgment on the agency record pursuant to USCIT R. 56.2 is denied, and it is further

**ORDERED** that the Commission's negative preliminary injury determination in *Certain Steel Wire Rod From Trinidad and Tobago,* Inv. No. 731–TA–649, is affirmed, and it is further

**ORDERED** that the action is dismissed.