**EMPIRE PLOW CO. INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Court No. 85-11-01620.

United States Court of
International Trade.

Nov. 18, 1987.

Beveridge & Diamond, P.C., (Alexander W. Sierck, and R. Paul Beveridge, Washington, D.C. on the motion), for plaintiff.

Lyn M. Schlitt, Gen. Counsel, Michael P. Mabile, Asst. Gen. Counsel, U.S. Intern. Trade Com'n, (John C. Kingery, on the motion), and Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Elizabeth C. Seastrum, Washington, D.C. for defendant.

## MEMORANDUM OPINION

CARMAN, Judge:

Plaintiff moves, pursuant to Rule 56.1 of the Rules of this Court, for review upon the agency record of a negative determination by the United States International Trade Commission (ITC), published in *Agricultural Tillage Tools From Brazil*, 50 Fed.Reg. 43,008 (1985), *amended, Agricultural Tillage Tools From Brazil*, 51 Fed.Reg. 453 (1986). The ITC determined, pursuant to section 705(b) of the Tariff Act of 1930 (the Act), as amended, 19 U.S.C. § 1671d(b), that an industry in the United States was not materially injured or threatened with material injury by reason of subsidized imports from Brazil of *non-disc* shaped (non-round) agricultural tillage tools, provided for in item 666.00 of the Tariff Schedules of the United States

(TSUS). The ITC also made an affirmative finding an industry in the United States was materially injured by reason of subsidized *disc* shaped (round) agricultural tillage tools from Brazil. This action challenges only the negative aspect of the determination.

## FACTS

Plaintiff, on behalf of United States domestic producers of agricultural tillage tools, filed a petition with the ITC in September, 1984, alleging the production and/or exportation to the United States of agricultural tillage tools from Brazil were being subsidized by the government of Brazil, and the domestic industry was materially injured or threatened with material injury by reason of sales in the United States of such goods. The ITC conducted an investigation and determined, on November 12, 1984, there was a reasonable indication an industry in the United States was threatened with material injury by reason of the subject imports. On June 10, 1985, the United States International Trade Administration (Commerce) made a preliminary determination there was reason to believe certain benefits, which constituted subsidies within the meaning of section 703(b) of the Act, as amended, 19 U.S.C. § 1671b(b), were being provided to manufacturers, producers, or exporters of the subject products in Brazil. *Preliminary Affirmative Countervailing Duty Determination; Certain Agricultural Tillage Tools From Brazil,* 50 Fed.Reg. 24270 (June 10, 1985). The ITC commenced its final investigation simultaneously. *Agricultural Tillage Tools From Brazil,* 50 Fed.Reg. 28292 (July 11, 1985). On August 26, 1985, Commerce published its final affirmative countervailing duty determination stating it had determined certain benefits received by the foreign producers constituted subsidies at a rate of 8.06 percent *ad valorem. Final Affirmative Countervailing Duty Determination; Certain Agricultural Tillage Tools From Brazil,* 50 Fed.Reg. 34525 (1985). Subsequently, the majority of the ITC Commissioners, by a 4 to 1 vote, made an affirmative determination that injury to an industry in the United

States did exist by reason of subsidized imports of disc shaped agricultural tillage tools, but otherwise found no material injury or threat of material injury to an industry in the United States existed by reason of imports from Brazil of non-disc shaped agricultural tillage tools.

Among the materials considered in evidence by the Commissioners were ITC staff reports which indicated the only company that *imported and produced* non-disc agricultural tillage tools was Wiese Corporation (Wiese). In one of the staff reports the ITC staff apparently indicated incorrectly that Herschel Corporation (Herschel) was an importer of non-disc agricultural tillage tools. Record at No. 18, p. A–14. Other portions of the record revealed the ITC staff reports indicated Herschel imports discs but not non-disc agricultural tillage tools from Brazil. Record at No. 20.04, pp. 9, 24; No. 21–07, pp. 4, 9, 9A. In any event, Wiese was included and Herschel was excluded by the ITC in its industry headcount.

## CONTENTIONS OF PARTIES

Plaintiff contends the ITC committed reversible error by including within the headcount of the domestic industry two United States producers which, when tabulated together, sold a significant amount of non-disc tillage tools imported from Brazil. These two producers, continues plaintiff, collected significant levels of sales in the market and were significantly more profitable in the market than those domestic producers which did not additionally import the Brazilian product. Plaintiff maintains inclusion of these two producers into the category of all of the U.S. domestic producers considered by the ITC skewed the aggregate figures on industry performance and made the domestic industry appear far healthier than it would have been had the two producers been excluded. Plaintiff urges the ITC exceeded its authority by including these two domestic producers in the headcount of the rest of the domestic industry considered in establishing which industries constituted the "domestic indus-

try" and which constituted "related parties" pursuant to 19 U.S.C. § 1677(4)(B).

Defendant contends the consideration by the ITC of Wiese as a part of the total domestic industry in the United States producing non-disc shaped agricultural tillage tools was supported by substantial evidence on the record and was not otherwise contrary to law. Defendant also argues although Herschel was incorrectly portrayed in one part of the record as an importer of non-disc type agricultural tools, it was characterized correctly at another part of the staff report as importing *disc* and not *non-disc* items. Furthermore, had the staff tabulation concerning Herschel been correctly shown, states defendant, the difference between the non-importer and importers would have been less and the data supplied to the ITC would have presumably been more favorable to plaintiff. Finally, defendant points out although plaintiff made its "related parties" argument known to the ITC at the preliminary and final investigations, with respect to another importer, it did not raise the "related parties" issue, concerning Wiese, with the ITC.[1]

### THE QUESTION PRESENTED

The Court is presented with the question of whether or not the ITC's decision not to exclude the firms of Wiese & Herschel from the investigation of the domestic non-disc agricultural tillage industry, under the related parties section of the applicable statute, was unsupported by substantial evidence or otherwise not in accordance with law.

The relevant statute provides as follows:

(B) *Related parties.*—When some producers are related to exporters or importers, or are themselves importers of allegedly subsidized or dumped merchandise, the term "industry" may be applied in appropriate circumstances by excluding

such producers from those included in that industry.

19 U.S.C.A. § 1677(4)(B) (1980).

### DISCUSSION

The Court, upon review of the instant determination, must sustain the determination of the ITC unless it is unsupported by substantial evidence on the record or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B); *American Spring Wire Corp. v. United States*, 8 CIT 20, 590 F.Supp. 1273 (1984), *aff'd sub nom. Armco, Inc. v. United States*, 760 F.2d 249 (Fed.Cir.1985). The administrative agency "has broad discretion in the enforcement of the trade laws and ... [its] 'decision does not depend on the "weight" of the evidence, but rather on [its] expert judgment ... based on the evidence of the record.'" *Manufacturas Industriales de Nogales, S.A. v. United States*, —— CIT ——, ——, 666 F.Supp. 1562, 1567 (1987) (quoting *Matsushita Electric Industrial Co. v. United States*, 750 F.2d 927, 933 (Fed.Cir.1984)). Much deference is given to agency interpretation provided it is sufficiently reasonable; it need not be the only reasonable interpretation. *Actor Inc. v. United States*, —— CIT ——, ——, 658 F.Supp. 295, 299 (1987).

The meaning of "substantial evidence" has been described as follows:

'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Substantial evidence 'is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'

*Matsushita Electric Industrial Co. v. United States*, 750 F.2d 927, 933 (Fed.Cir. 1984) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); and quoting *Consolo*

---

1. It appears from the record the plaintiffs also did not raise the "related parties" issue as to

Herschel at the administrative level.

*v. Federal Maritime Comm'n,* 383 U.S. 607, 619, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966) respectively).

The Court may not substitute its judgment for that of the ITC, even though the Court might have made a different determination on a trial *de novo. Maine Potato Council v. United States,* 9 CIT 293, 613 F.Supp. 1237 (1985), *American Spring Wire Corp.,* 8 CIT 20, 590 F.Supp. 1273 (1984).

The ITC majority of Commissioners, after an extensive analysis of the evidence presented, found any problems experienced by the domestic industry during the period under investigation were not occasioned by the subsidy of imports of other non-disc type tillage tools from Brazil. The ITC observed that while there was some evidence of lost sales and underselling with respect to the non-disc agricultural tillage tools from Brazil, the low and relatively stable level of the market share of these imports did not indicate they were a cause of material injury.

█ The Court finds the analysis of the facts by the ITC was reasonable and supported by substantial evidence on the record and was otherwise in accordance with law. The Court also finds the decision by the ITC to include only Wiese and not Herschel in the industry headcount was supported by substantial evidence on the record. Therefore, only the inclusion of Wiese in the ITC industry headcount shall be considered by the Court.

Plaintiff maintains this is a case of first impression and urges the Court decide whether or not and under what circumstances the ITC should exercise its discretion under § 1677(4)(B) to exclude producers that play two roles, i.e., as both importer and domestic producer. Plaintiff, citing *Freeport Minerals Co. v. United States,* 776 F.2d 1029 (Fed.Cir.1985), contends when Congress gave the ITC authority to apply general standards in countervailing duty and antidumping investigations on a case by case basis, Congress intended the "exercise of (such) discretion be predicated upon a judgment anchored in the language and spirit of the relevant statutes and reg-

ulations" *Id.* at 1032. Plaintiff maintains Congress did not give the ITC unbridled authority to apply general criteria in such a manner as to skew the analysis of the economic data. Although the ITC has recognized this principle in other cases, plaintiff urges it implicitly failed to follow that principle in this case. Plaintiff believes the ITC consideration of two producers that played distinct roles, i.e., that of domestic producer and importer in what plaintiff characterizes as the "universe of domestic producers", skewed the economic results.

Defendant, on the other hand, points out while the ITC did not explicitly discuss the related parties issue in its determination, the plaintiff, at the administrative level, never raised the issue with the ITC. Citing various case authority, defendant points out the courts have repeatedly held: "the Commission is not required to issue findings and conclusions on an issue concerning a statutory element simply because it was presented by the petitioner." Defendant's Memorandum in Response to Plaintiff's Motion for Judgment upon the Agency Record at 9, *Empire Plow Co. v. United States,* Court No. 85–11–01620. Furthermore, defendant suggests plaintiff is in a weaker position to complain when it did not raise the issue at the administrative level. Lastly, in defense of its position, defendant maintains the following: "absent a showing to the contrary, the Commission is presumed to have considered all the evidence in the record." *Jeannette Sheet Glass Corp. v. United States,* 9 CIT 155, 162, 607 F.Supp. 123, 130 (1985), *appeal dismissed,* 803 F.2d 1576 (Fed.Cir.1986), *vacated in part,* —— CIT ——, 654 F.Supp. 179 (1987).

█ It is clear from the language of § 1677(4)(B) the "related parties" provision *may be* applied to a domestic producer if the domestic producer is related to a foreign producer or imports the merchandise in question. *Gilmore Steel Corp. v. United States,* 7 CIT 219, 226, 585 F.Supp. 670, 677 (1984). It is clearly within the ITC's discretion to apply the related parties provision in its analysis of the facts of the case. What remains unclear is the reasonableness of the agency's discretion in deciding

under what circumstances to apply the provision.

There appears to be little legislative history to explain the "related parties" provision in § 1677(4)(B). The Legislative History of the Trade Agreements Act of 1979, nevertheless, provides as follows:

Thus, for example, where a U.S. producer is related to a foreign exporter and the foreign exporter directs his exports to the United States so as not to compete with his related U.S. producer, this should be a case where the ITC would not consider the related U.S. producer to be a part of the domestic industry.

S.Rep. No. 249, 96th Cong., 1st Sess. 83, *reprinted in* 1979 U.S. Code Cong. & Admin. News 381, 469.

This illustration applies to the first scenario where a domestic producer is related to the foreign producer. Such is not the present situation involving Wiese. But the legislative history does provide some analogous guidance with respect to the ITC's discretionary powers.

The above legislative report displays an intent to exclude from the industry headcount domestic producers which, due to a relationship with the foreign producer, benefit from the foreign exporter "direct[ing] his exports to the United States so as not to compete with [the] related U.S. producer...." S.Rep. No. 249 at 83, U.S.Code Cong. & Admin.News 1979, p. 469. *See also Rock Salt From Canada,* Inv. No. 731–TA–239, USITC Publication No. 1798, at 11 (January 1986) ("An appropriate circumstance for applying the related parties provision is one in which the foreign producer directs his exports to the United States in such a manner so as not to compete with his related U.S. producer.") Drawing the analogy closer to the subject at hand, recent ITC determinations have set forth an important consideration warranting the application of the "related parties" provision rests in determining whether the domestic producer substantially benefits from the relation to the subject imports. If there is a substantial benefit gained from such relationship, the produc-

ers are properly excluded as related producers. *Id.* at 10.

While it appears the Court of International Trade has not previously decided when related parties should be excluded under § 1677(4)(B), the ITC has commented frequently on the related party exclusion issue. The ITC has typically approached this issue with a two-step analysis: (1) whether or not the domestic producers are themselves importers of the subject product or are related to the importers or foreign producers of such product through a corporate relationship; and (2) whether or not there are appropriate circumstances for excluding those domestic producers from the domestic industry for the injury analysis. *Rock Salt From Canada,* USITC Publication No. 1798. *See Certain Table Wine From France and Italy,* Inv. Nos. 701–TA–210, 211 (Preliminary) and 731–TA–167, 168 (Preliminary), USITC Publication No. 1502 at 10 (March 1984). The ITC has also used a three-step analysis methodology: (1) whether or not the company qualifies as a "domestic producer"; (2) whether or not the firm is "related" within the meaning of section 771(4)(B); and (3) whether or not, in view of that relationship, there are appropriate circumstances for excluding the company from the definition of the domestic industry. *Color Television Receivers From the Republic of Korea and Taiwan,* Inv. Nos. 731–TA–134, 135 (Final), USITC Pub. No. 1514 (April 1984).

Once the ITC has determined the related producer status under the first and/or second steps in the analysis, the ITC apparently exercises its discretion in determining whether or not the "appropriate circumstances" exist for excluding the related parties from the domestic industry. In such situations, the ITC has declared: "Domestic producers who substantially benefit from their relation to the subject imports are properly excluded as related producers." *Rock Salt From Canada,* USITC Publication No. 1798, at 10. Benefits accrued from the relationship appear to be a major factor considered by the ITC. *See id.* at 11 ("Among the factors considered by the Commission in previous in-

vestigations are: ... (2) the reasons the domestic producers have chosen to import the product under investigation, that is *to benefit* from the unfair trade practice or in order to enable it to continue production and compete in the domestic market...." This is a reasonable approach when viewed in light of the legislative history discussed above.

The ITC is also concerned about excluding companies which account for a significant share of the domestic production and which exclusion would result in impairing the accuracy of the ITC determination, *Id.* at 13; *Certain Table Wine From France and Italy*, Publication No. 1502, at 11, 12; *Color Television Receivers From the Republic of Korea and Taiwan*, Publication No. 1514. at 9; and including companies which inclusion would skew the economic data. *Certain Table Wine From France and Italy*, Publication No. 1502, at 11.

Although all of the above considerations have been published by the ITC in other past determinations implementing the "related parties" provision, these considerations were not published in the instant determination presumably because the "related parties" issue was not raised at the administrative level before the ITC concerning Wiese or Herschel. Plaintiff, while not raising its argument at the administrative level, now appears to complain the ITC has not set forth reasons for including the two producers with the other domestic producers. The Court finds this complaint is without merit. The ITC need not discuss every issue raised in its determination even though it has been raised at the administrative level. *Jeanette Sheet Glass*, 9 CIT at 162, 607 F.Supp. at 130. This rule would seem to have greater impact where the issue was not even raised at the administrative level. Where the issue has not been raised at the administrative level, as in the present circumstances, a litigant must not be allowed to circumvent the requirement of exhausting its administrative remedies by raising the issue in its civil action. *Hercules, Inc. v. United States*, — CIT —, 673 F.Supp. 454, 476 (1987). A party challenging the ITC determination must con-

test those factual findings at the administrative level in order to raise them again before this Court, exceptions notwithstanding. Plaintiff, here, attempts to argue a factual error exists in the inclusion of Weise in the headcount when this argument was not raised in the administrative hearings below. Accordingly, this Court must dismiss this claim. Furthermore, the Court finds the determination of the ITC is reasonable based upon the evidence presented in the record.

The Court holds plaintiff has failed to demonstrate the determination of the ITC was unsupported by substantial evidence on the record or otherwise contrary to law. Plaintiff's motion is denied; the final determination of the ITC in *Agricultural Tillage Tools From Brazil* is affirmed; and this action is dismissed. Judgment will be entered accordingly.

SO ORDERED.