**Slip Op. 04-139**

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
:
ALLIED MINERAL PRODUCTS, INC.,      :
:
        Plaintiff,      :
    and      :
THE 3M COMPANY      :
    and      :
COMETALS, A DIVISION OF COMMERCIAL      :
METALS COMPANY,      :
:
        Plaintiff-Intervenors,      :
:
        v.      :      Court No. 03-00936
:
UNITED STATES,      :      **Public Version**
:
        Defendant,      :
    and      :
C-E MINERALS,      :
TREIBACHER SCHLEIFMITTEL      :
CORPORATION,      :
    and      :
WASHINGTON MILLS COMPANY, INC.,      :
:
        Defendant-Intervenors.      :
_____:

[ITC determination affirmed.]

Dated: November 12, 2004

Baker & McKenzie, LLP (Kevin M. O'Brien and Lisa A. Murray) for plaintiff and plaintiff-intervenor.

Barnes, Richardson & Colburn (Matthew T. McGrath and Stephen W. Brophy) for plaintiff-intervenor.

James M. Lyons, Acting General Counsel, Robin L. Turner, Acting Assistant General Counsel for Litigation, United States International Trade Commission (Peter L. Sultan) for defendant.

Schagrin Associates (Roger B. Schagrin) for defendant-intervenors.

**OPINION**

**RESTANI, Chief Judge:**

Plaintiff Allied Mineral Products, Inc. ("Allied Mineral")  appears before the court on a motion for judgment upon the agency record pursuant to USCIT Rule 56.2, challenging the final determination issued by the U.S. International Trade Commission ("the Commission") in the antidumping investigation of refined brown aluminum oxide ("RBAO") from China.  Refined Brown Aluminum Oxide from China (Nov. 2003), Pl.'s App., Tab 10 [ hereinafter Final Determination ].

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2000).  In accordance with 19 U.S.C. § 1516a(b)(1)(B)(2000), the court shall hold unlawful any determination "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

### FACTUAL AND PROCEDURAL BACKGROUND

RBAO is a solid, inorganic chemical derived from the aluminum oxide in mined bauxites and produced by crushing, grinding, and sieving brown aluminum oxide ("BAO") in ingot or crude form.  Staff Report (Oct. 9, 2003), at I-3, Pl.'s App., Tab 5.  It is mainly used in the manufacture of abrasive products, such as grinding wheels, discs, and blasting media, and refractory applications such as the linings of furnaces and ovens, but is also used in the production of ceramics, pigments, and chemical reagents.  Id.  There are currently no domestic producers of crude BAO and five domestic producers of RBAO: C-E Minerals, Detroit

Abrasives, Great Lakes, Treibacher Schleifmittel Corporation ("Treibacher") and Washington

Mills Company, Inc. ("Washington Mills").  Thus, all five domestic producers depend upon

imports of BAO to provide raw material for their domestic RBAO production.  Id. at II-1.

The Commission instituted an investigation pursuant to a petition filed by Washington

Mills on November 20, 2002, alleging that a domestic industry is materially injured and

threatened with material injury by reason of less than fair value imports of RBAO from China.

Id. at I-1. The International Trade Administration ("Commerce") defined the scope of the

investigation to include:

> ground, pulverized or refined artificial corundum, also known as brown
> aluminum oxide or brown fused alumina, in grit size of 3/8 inches or less.
> Excluded from the scope of the investigation is crude artificial corundum in
> which particles with a diameter greater than 3/8 inch constitute at least 50
> percent of the total weight of the entire batch.  The scope includes brown
> artificial corundum in which particles with a diameter greater than 3/8 inch
> constitute less than 50 percent of the total weight of the batch.

Refined Brown Aluminum Oxide from China, 68 Fed. Reg. 55589 (Dep't Commerce Sept. 26,

2003) (final).  Following which, it found that the subject merchandise is being sold, or is likely to

be, sold in the United States at less than fair value.  Id.

In making its injury determination, the Commission defined the domestic like product

more expansively than the subject merchandise, to include,

> (1) all domestically produced merchandise corresponding to the definition in
> the scope of the investigation, as well as (2) any BAO for which particles with
> a diameter greater than 3/8 inch constitute at least 50 percent of the total
> weight of the entire batch, as long as this product has been crushed, screened,
> and sorted into consistent sizes.

Final Determination at 8.  The Commission found that Great Lakes engages in sufficient

production-related activity in the United States to qualify as a member of the domestic industry, however, the issue was a "close one." Id. at 13. The Commission proceeded to exclude Great Lakes from the definition of domestic industry under 19 U.S.C. §1677(4)(B) (2000), finding appropriate circumstances to do so based on Great Lakes' strong interest in maintaining access to the subject merchandise. Id. at 3. With Great Lakes' financial results excluded from consideration, the Commission determined that the domestic industry is materially injured by reason of imports of RBAO from China. Id. at 17.

## DISCUSSION

The issue before the court is the Commission's discretion, under 19 U.S.C. §1677(4)(B), to exclude Great Lakes from the definition of domestic industry. The relevant statute provides,

> If a producer of a domestic like product and an exporter or importer of the subject merchandise are related parties, or if a producer of the domestic like product is also an importer of the subject merchandise, the producer may, in appropriate circumstances, be excluded from the industry.

19 U.S.C. §1677(4)(B)(ii) (emphasis added). The court has held that "[t]he decision whether to exclude parties who import or are related to exporters of the subject merchandise from consideration of the domestic industry is within the discretion of the Commission." Torrington Co. v. United States, 16 CIT 220, 224, 790 F. Supp. 1161, 1168 (1992). In making this exclusion analysis, the Commission has used a three-step inquiry: (1) whether or not the company qualifies as a domestic producer; (2) whether or not the firm is related or importing subject merchandise; and (3) whether or not, in view of the relationship, there are appropriate circumstances for excluding the company from the definition of the domestic industry. Empire Plow Co. v. United States, 11 CIT 847, 853, 675 F. Supp. 1348, 1353 (1987). Here, the Commission excluded Great Lakes from the definition

of domestic industry, finding appropriate circumstances under the third prong of this test because Great Lakes accrued a substantial benefit from its importation of the subject merchandise. Final Determination at 15.

Allied Mineral concedes that Great Lakes is an importer of the subject merchandise, and acknowledges that under this statute Great Lakes may be excluded from the Commission's definition of domestic industry where appropriate circumstances exist for exclusion. Allied Mineral challenges the Commission's "appropriate circumstances" rationale as unlawful arguing Great Lakes was excluded based on the affect on the injury determination Great Lakes' positive financial data would have generated, and the Commission did not apply the "appropriate circumstances" factors evenly to all domestic producers. Further, Allied Mineral challenges the Commission's "appropriate circumstances" rationale as unsupported by substantial evidence, arguing that Great Lakes did not accrue substantial benefits from its importation of the subject merchandise because its import behavior was in line with that of the other members of the domestic industry.

**I.       The Commission's Appropriate Circumstances Test is in Accordance with the Law.**

As indicated, 19 U.S.C. §1677(4)(B) permits the Commission to exclude domestic producers who import subject merchandise from the definition of domestic industry, if it determines that appropriate circumstances exist for exclusion. The most significant factor considered by the Commission in making the "appropriate circumstances" determination is whether the domestic producer accrued a substantial benefit from its importation of the subject merchandise. Empire Plow, 11 CIT at 853, 675 F. Supp. at 1353. Courts have emphasized that,

> [a]lthough little legislative history behind the related parties provision exists,

the provision's purpose is to exclude from the industry headcount domestic producers substantially benefitting from their relationships with foreign exporters. Congress enacted the provision so that domestic producers whose interests in the imports were strong enough to cause them to act against the domestic industry would be excluded from the ITC's consideration and investigation into material injury or threat thereof.

USEC, Inc. v. United States, 132 F. Supp. 2d 1, 12 (Ct. Int'l Trade 2001). Thus, the legislative history of §1677(4)(B) evinces Congress' intent to exclude domestic producers who have accrued a substantial interest in the subject merchandise. Empire Plow, 11 CIT at 853, 675 F. Supp. at 1353; Rock Salt from Canada, 51 Fed. Reg. 3,271 (USITC Jan. 1986) (final).

Courts have also approved the Commission's consideration of the following factors: (1) the percentage of domestic production attributable to the importing producer; (2) the reason the U.S. producer has decided to import the product subject to investigation (whether to benefit from unfair trade practice or to enable them to continue production and compete in the domestic market); (3) whether inclusion or exclusion of the importing producer will skew the data for the rest of the industry; (4) the ratio of import shipments to U.S. production for the importing producer; and (5) whether the primary interest of the importing producer lies in domestic production or importation. Sandvik AB v. United States, 13 CIT 738, 748, 721 F. Supp. 1322, 1332 (1989); Torrington, 16 CIT at 224, 790 F. Supp. at 1168; Melamine Institutional Dinnerware from China, Indonesia, & Taiwan, 62 Fed. Reg. 8,775 (USITC Feb. 1997) (final). The Commission is not required to make findings as to each specific factor. Sandvik, 13 CIT at 748, 721 F. Supp. at 1332.

A.     **The Commission May Consider Financial Results in Finding Appropriate Circumstances.**

Allied Mineral argues that the Commission placed unlawful emphasis on Great Lakes' financial results to support its "appropriate circumstances" determination.[1] The court finds that the Commission considered Great Lakes' financial results as just one of numerous factors contributing to its conclusion that Great Lakes substantially benefitted from its importation of the subject merchandise. Accordingly, the Commission did not place unlawful emphasis on Great Lakes' financial results in making its "appropriate circumstances" determination.

---

[1] In excluding Great Lakes from domestic industry, the Commission reasoned that,

> Great Lakes accounted for [         ] percent of domestic production in 2002. The company [
>
>                                         ] Great Lakes imports the subject merchandise from China and processes a portion of its imports by further crushing, sizing, and/or packaging the product. Because Great Lakes relied virtually entirely on subject merchandise as an input for its further processing, its shipments of imports of refined BAO from Chian were equivalent to [
> ] percent of its U.S.-produced commercial shipments in 2000, 2001, 2002, and early 2003. The company was a major importer of the subject merchandise throughout the period examined; it accounted for [
> ] percent of total imports from China in 2000, 2001, 2002, and the interim 2003, respectively. In the course of interim 2003, Great Lakes began to shift from importing the subject merchandise to importing BAO that exceeded the grain size and weight parameters of the scope [ definition ].
> As in the preliminary determination, we find that appropriate circumstances exist to exclude Great Lakes from the definition of the domestic industry. The company [
>
>                                         ], and thus has a strong interest in maintaining its access to these imports. The company's sales volume and overall financial results towards the end of the period examined reflect [
>
>                                         ]. Indeed, Great Lakes' sales of refined BAO [
>
>                                         ], and its financial results [
>
>                                         ].

Final Determination at 15-16 (footnotes omitted).

The Commission's analysis of Great Lakes' financial results served to substantiate its finding that Great Lakes accrued a substantial benefit from its importation of the subject merchandise. First, the Commission found that Great Lakes substantially imported subject merchandise to meet its raw material requirements,[2] whereas other domestic producers imported crude BAO to meet their raw material requirements. Second, the record evidence indicates that Great Lakes was importing the subject merchandise at lower prices than other domestic producers were paying for crude BAO. Id. The record also indicates that Great Lakes was using this cost advantage to increase sales volume by underpricing competing domestic RBAO producers. Thus, the Commission reasoned that Great Lakes' importation of the subject merchandise gave it a competitive advantage in domestic RBAO production, which translated into improved financial results.[3]

The court also finds that the Commission gave consideration to numerous factors within its discretion under §1677(4)(B)(i), some of which are inextricably tied to Great Lakes' financial performance. The Commission's determination found that (1) the percentage of domestic production attributable to Great Lakes is significant; (2) Great Lakes imported a significant amount of subject merchandise in comparison to its U.S. production; and (3) Great Lakes' inclusion in domestic industry would skew the data for the rest of the industry. Moreover, the record supports additional findings that (1) Great Lakes decided to import the subject

---

[2] The subject merchandise amounted to [      ] percent of Great Lakes' raw material imports. Petitioner's Final Comments (Oct. 17, 2003), at Ex. 2, C.R. Doc. 121, Pl.'s App., Tab 4.

[3] During the period of investigation, Great Lakes' sales volume [                                    ], while the results for the other domestic producers [                    ]. Staff Report at VI-5, Table VI-2.

merchandise to benefit from an unfair trade practice; and (2) Great Lakes' primary interest lies in importation.[4] Thus, the Commission's rationale is lawful under §1677(4)(B)(i) and its consideration of Great Lakes' financial results is entirely consistent with its "appropriate circumstances" determination.

**B.      The Commission's Treatment of the Other Domestic Producers was not an Unfair, Discriminatory Application of the Appropriate Circumstances Test.**

Allied Mineral argues that the Commission's analysis is unlawful because it focuses on Great Lakes' interests in the subject merchandise, while ignoring the same interests of the other domestic producers. According to Allied Mineral, domestic producers C-E Minerals and Treibacher are prime candidates for exclusion because, like Great Lakes, during the period of investigation they imported raw material from China that was further processed into RBAO. Moreover, Allied Mineral contends that both C-E Minerals and Treibacher are: (1) affiliated with Treibacher Schleifmittel Guizhou Co., Ltd., a Chinese producer and exporter of RBAO; (2) related to Graystar LLC, a U.S. importer of RBAO from China; and (3) owned by Imerys, a foreign based company. Finally, Allied Mineral argues that Detroit Abrasives would have been a more appropriate domestic producer to exclude because it acted against the interests of domestic

---

[4] Questionnaire responses indicate that Great Lakes' customers perceived the company to be an importer. A refractories end user, [                         ], indicated that it [                                                     ]. Questionnaire Response (August 8, 2003), C.R. Doc. 52, Def.-Inter.'s App., Tab 17. Further, [                    ] reported that all of its RBAO purchases were from Great Lakes and that the RBAO was from China, but "sized and packaged by Great Lakes Minerals." Questionnaire Response, (August 6, 2003), C.R. Doc. 51, Def.-Inter.'s App., Tab 12.

industry by opposing the petition for relief.[5]

First, the Commission concluded that Great Lakes was a major importer of subject merchandise,[6] whereas Treibacher and C-E Minerals imported raw material from China, but were not major importers of the subject merchandise. Record evidence shows that Treibacher imported relatively small amounts of the subject merchandise during the period of investigation.[7] As for C-E Minerals, the Commission found that it was a major importer of the subject merchandise in 2000 and 2001,[8] but in those years it did not produce RBAO domestically. Following its acquisition by Imerys, however, C-E Minerals began domestic production of RBAO and in 2002 it ceased importation of the subject merchandise. Therefore, the Commission's decision not to exclude Treibacher and C-E Minerals from the definition of

_____

[5] This argument arises from USEC, in which the court notes that "Congress enacted the provision so that domestic producers whose interests in the imports were strong enough to cause them to act against the domestic industry would be excluded from the ITC's consideration and investigation into material injury or threat thereof." USEC, 132 F. Supp. 2d at 12 (emphasis added). Such a reading of USEC would establish a high bar to exclusion, contrary to this court's precedent as to Commission exclusion determinations. Sandvik, 13 CIT at 748, 721 F. Supp. at 1332; Torrington, 16 CIT at 224, 790 F. Supp. at 1168. This interpretation would be over-inclusive in excluding Detroit Abrasives, which imported a mere [          ] of subject merchandise during 2002. Staff Report at III-6 n.28.

[6] The Commission found that Great Lakes purchased [       ] of its raw material inputs through importation of the subject merchandise. Id. at III-5. As a share of total reported imports of subject merchandise, Great Lakes' imports amounted to a substantial [
    ] percent for 2000, 2001, 2002, and January through June 2003 respectively. Id.

[7] Treibacher's importation of the subject merchandise amounted to [
   ] percent of total reported imports of subject merchandise for 2000, 2001, 2002, and January through June 2003 respectively. Id. at III-3 n.12.

[8] C-E Minerals' imports of the subject merchandise amounted to a substantial [
   ] percent of total reported imports of subject merchandise for 2000 and 2001 respectively. Id. at III-4 n.15.

domestic industry is reasonable because they are not major importers of the subject merchandise.

Second, neither Treibacher nor C-E Minerals has the affiliations or relationships required by §1677(4)(B) to be excluded as related parties from domestic industry.  Under §1677(4)(B)(i), a domestic producer can be excluded as a related party if it is related to "an exporter or importer of the subject merchandise."  A domestic producer is related if:

> (I) the producer directly or indirectly controls the exporter or importer,
> (II) the exporter or importer directly or indirectly controls the producer,
> (III) a third party directly or indirectly controls the producer and the exporter or importer, or
> (IV) the producer and the exporter or importer directly or indirectly control a third party and there is reason to believe that the relationship causes the producer to act differently than a nonrelated producer.

19 U.S.C. §1677(4)(B)(ii).  Here, Allied Mineral argues that C-E Minerals and Treibacher are related parties with Treibacher Schleifmittel, Graystar, and Imerys.  No domestic producer can be excluded as a related party, however, unless the party to whom they are related is an exporter or importer of the subject merchandise.

Treibacher Schleifmittel is a Chinese producer and exporter of RBAO, but it does not export any RBAO to the United States.  Petitioner's Postconference Brief (Dec. 17, 2002), at A-6, P.R. Doc. 28, Def.'s App., Tab 3.  Therefore, neither its relationship with Treibacher nor its relationship with C-E Minerals triggers the application of §1677(4)(B).  Graystar is an importer of the subject merchandise, so §1677(4)(B) is triggered.  But, in order for a related party to be excluded, appropriate circumstances must exist for exclusion.  Here, appropriate circumstances do not exist because neither C-E Minerals nor Treibacher have accrued a substantial benefit from

Graystar's importation of the subject merchandise.[9]  Finally, Imerys is a foreign based company

which owns C-E Minerals and Treibacher.  Allied Mineral argues that by virtue of its ownership

of the two companies, Imerys has an incentive to gain market share at the expense of domestic

RBAO producers.  The court finds that such an interest does not make Imerys an importer or

exporter of the subject merchandise as required by §1677(4)(B).  Accordingly, the court finds

that the Commission consistently applied the "appropriate circumstances" factors to all domestic

producers.

**II.       The Commission's Determination is Based on Substantial Evidence.**

Allied Mineral challenges the Commission's decision to exclude Great Lakes from

domestic industry as not based on substantial evidence.  Substantial evidence means "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Eli

Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1363 (Fed. Cir. 2004).  The court finds the record

evidence sufficient to support the Commission's determination that appropriate circumstances

exist for Great Lakes' exclusion.

The Commission excluded Great Lakes from domestic industry because it found that its

interest in the subject merchandise is adverse to the domestic industry's interest in securing

antidumping duties.  According to the Commission, Great Lakes substantially benefitted from its

importation of the subject merchandise by using the subject merchandise as raw material for its

domestic RBAO production.  Under the Commission's theory, Great Lakes' competitive

---

[9] Its imports accounted for [                                        ] percent of total imports of RBAO from China for 2000, 2001, 2002, and January through June 2003 respectively, and were thus [
                                        ].  Graystar LLC Importer's Questionnaire Response (July, 21, 2003), at 5, C.R. Doc. 33, Def.'s App., Tab 5.

advantage begins when it receives bargain prices for imports of the subject merchandise. Some of the subject merchandise is resold without any further processing, although the majority is used as raw material inputs in Great Lakes' domestic RBAO production. Great Lakes then sells the domestically produced RBAO at below market prices, increasing both sales volume and profits because of its raw material cost advantage.[10]

Allied Mineral argues that there is insufficient record evidence to support the Commission's determination. First, it argues that there is no evidence that Great Lakes accrued a substantial benefit through importation of the subject merchandise. According to Allied Mineral,

---

[10] Allied Mineral challenges the Commission's rationale that Great Lakes received a more valuable product at a lower price as a post hoc explanation for the Commission's findings. It argues that as a rationalization after the fact it must be rejected as a matter of course. See Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 169 (1962) ("A simple but fundamental rule of administrative law is that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."); see also In re Sang-Su Lee, 277 F.3d 1338, 1345-46 (Fed. Cir. 2002) ("Consideration by the appellate tribunal of new agency justifications deprives the aggrieved party of a fair opportunity to support its position; thus review of an administrative decision must be made on the grounds relied on by the agency."). The administrative record, however, "need only indicate the determinative reason for the final action taken, and thus a court may uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Pension Benefit Guar. Corp. v. Wilson N. Jones Memorial Hosp., 374 F.3d 362, 367 (5th Cir. 2004).

The court finds that the Commission's determinative reason for its exclusion decision was that Great Lakes accrued a substantial benefit in its domestic RBAO production through importation of subject merchandise. The administrative record makes it reasonably clear that Great Lakes was benefitting from a significant cost advantage achieved through importation of subject merchandise that is more valuable and less costly than crude BAO. The Commission cited the fact that Great Lakes' importation of the subject merchandise accounted for [       ] percent of its imports, whereas other domestic producers imported relatively small amounts of the subject merchandise. Final Determination at 15. Moreover, during the period of investigation, Great Lakes' financial results [          ], while the other domestic producers were all experiencing [          ] financial results. Id. Record evidence also suggests that Great Lakes was perceived as an importer by its customers. A refractories end user, [                    ], indicated that it [                    ]. Questionnaire Response, C.R. Doc. 52, Def.-Inter.'s App., Tab 17.

all domestic producers share the same commercial interest in importing raw material for the

purpose of processing and selling RBAO.  Even though Commerce's definition of the subject

merchandise includes the raw materials imported by Great Lakes, Allied Mineral argues that

Great Lakes' subject merchandise imports are commercially indistinguishable from the non-

subject crude BAO imported by other domestic producers.

Second, Allied Mineral asserts that even the Commission recognized that the true

commercial distinction lies between BAO imported as a raw material input and BAO imported as

a finished product.  The Commission found that,

> [t]he size and the weight parameters contained in the scope definition do not
> reflect precisely the understanding within the industry of the distinction
> between refined and crude BAO.  Rather, the record shows that an important
> distinction between crude and refined product in the industry is that the
> refined product has been sized and is thus ready for use by industrial
> consumers.

Final Determination at 8.  Allied Mineral also points out that Great Lakes altered its import

practices following the onset of the antidumping investigation, substituting imports of crude

BAO for imports of the subject merchandise to fulfill its raw material requirements.[11]  Therefore,

---

[11] In early 2003, Great Lakes added additional capital equipment to increase its crushing and sizing capability, making it better equipped to handle larger sized BAO.  Staff Report at III-6.  Over the course of 2003, Great Lakes began to shift from imports of subject merchandise to imports of crude BAO that exceed the grain size and weight parameters of the scope definition. Id.  Allied Mineral contends that if Great Lakes could make this shift from in-scope to out-of-scope imports in 2003, it must not benefit from maintaining access to the subject merchandise.

But, Great Lakes attributed its importation shift to cost factors: "With the filing of the antidumping investigation, and the potential for antidumping duty liabilities associated therewith, it became cost-prohibitive to continue importing subject refined brown aluminum oxide."  Id. The court finds that Great Lakes' import behavior merely shows that following the onset of antidumping duties, importation of the subject merchandise is more expensive than importation of crude BAO.  If the antidumping duty discipline is removed, Great Lakes can easily shift its

(continued...)

according to Allied Mineral, Great Lakes never accrued a substantial benefit from its importation of the subject merchandise because it can obtain the same product by importing crude BAO.

The court finds sufficient evidence supporting the Commission's conclusion that Great Lakes accrued a substantial benefit from its importation of the subject merchandise. The record evidence shows that Great Lakes was using the subject merchandise as a raw material input to maintain a competitive advantage in selling further processed RBAO in the domestic marketplace. Great Lakes achieved this advantage by importing a more valuable product than crude BAO at a lower price.

Allied Mineral disputes the contention that Great Lakes was receiving a more valuable product at a lower price. Allied Mineral contends that the Commission acknowledged the lack of price distinction in its final determination when it stated that "there is no evidence of a significant difference in price between product on either side of the 3/8 inch parameter."[12] Final Determination at 8-9. Moreover, citing import prices from 2002, Allied Mineral asserts that the average cost of imports of subject merchandise is nearly identical to the cost of imports of crude BAO. Thus, Allied Mineral argues that both the record evidence and the Commission's own findings indicate that Great Lakes does not have a substantial interest in the subject merchandise

_____

[11](...continued)
importation back to the subject merchandise to regain its cost advantage in domestic RBAO production.

[12] The Commission subsequently included within the definition of like product "any BAO where particles with a diameter greater than 3/8 inch constitute at least 50 percent of the total weight of the entire batch, as long as this product has been crushed, screened, and sorted into consistent sizes." Final Determination at 7-8. The Commission's statement refers to the lack of evidence of a price distinction between subject merchandise and crude BAO that has been crushed, screened, and sorted; not a lack of evidence of a price distinction between subject merchandise and crude BAO used as raw material inputs.

because it achieved no benefit by purchasing the same product at the same price. The court

disagrees.

The Commission "has the discretion to make a reasonable interpretation of the facts, and

the court will not decide whether it would have made the same decision on the basis of the

evidence." Torrington, 16 CIT at 225, 790 F. Supp. at 1168-69. Here, the record evidence shows

a significant price distinction in 2002 between Great Lakes' imported subject merchandise that

required further processing and the non-subject crude BAO imported by the other domestic

producers.[13] Moreover, in 2000 and 2001, there was a greater spread between what Great Lakes

paid for subject merchandise that required further processing and what the other domestic

producers paid for crude BAO.[14]

Even if there were only a small difference in price, the Commission found that purchasers

of the subject merchandise receive a more valuable product than purchasers of crude BAO. A

purchaser of RBAO, such as Great Lakes, is receiving smaller, "more refined" particles that are

more valuable because there is less crushing and sorting to do before resale. Further, record

evidence shows that the degree of value added by Great Lakes' domestic processing is much

lower than that of most other domestic producers. Staff Report at VI-8. Therefore, substantial

---

[13] In 2002, Great Lakes paid an average of [                    ] for RBAO from China that required further processing, while Treibacher and Washington Mills paid an average of [                ] and [                    ] respectively for crude BAO. Petitioner's Final Comments, at Ex. 2, Def.'s App., Tab 4.

[14] In 2000, Great Lakes paid an average of [                    ] for RBAO from China that required further processing, while Treibacher and Washington Mills paid an average of [                ] and [                    ] respectively for crude BAO. In 2001, Great Lakes paid an average of [                ] for RBAO from China that required further processing, while Treibacher and Washington Mills paid an average of [                    ] and [        ] for crude BAO. Id.

evidence supports the Commission's conclusion that Great Lakes accrued a substantial benefit

from its importation of the subject merchandise to meet its raw material requirements.

**CONCLUSION**

In light of the foregoing, the court sustains the Commission's Final Determination.  The Commission's determination that appropriate circumstances exist to exclude Great Lakes, an importer of the subject merchandise, from the definition of the domestic industry is supported by substantial evidence and is in accordance with the law.


                                                        /s/ Jane A. Restani

                                                       Jane A. Restani
                                                       CHIEF JUDGE


Dated:  New York, New York

        This 12th day of November, 2004.